**ACLU of Hawai'i Foundation**

MATEO CABALLERO  10081
P.O. Box 3410
Honolulu, HI 96801
Telephone:  (808) 522-5908
Facsimile:  (808) 522-5909
E-mail:    mcaballero@acluhawaii.org

**American Civil Liberties Union Foundation**

JULIA KAYE
SUSAN TALCOTT CAMP
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:  (212) 549-2633
Facsimile:  (212) 549-2650
E-mails:   jkaye@aclu.org
           tcamp@aclu.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| GRAHAM T. CHELIUS, M.D., *et al*.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>ALEX M. AZAR, J.D., *in his official capacity as* SECRETARY, U.S. D.H.H.S., *et al*.,<br><br>                    Defendants. | CIV. NO. 1:17-cv-00493-JAO-RT<br><br>[CIVIL RIGHTS ACTION]<br><br>**PLAINTIFFS' SECOND RULE 16 SCHEDULING CONFERENCE STATEMENT; CERTIFICATE OF SERVICE** |

# PLAINTIFFS' SECOND RULE 16 SCHEDULING CONFERENCE STATEMENT

Pursuant to Rule 16.2(b) of the Local Rules of Practice for the United States District Court for the District of Hawaii, Plaintiffs Graham T. Chelius, M.D., *et al.* ("***Plaintiffs***") submit the following statement:

## I. Short Statement of the Nature of the Case

Since 2000, mifepristone has been approved by Defendant United States Food and Drug Administration (the "***FDA***") under the brand name Mifeprex® for use, in a regimen with the drug misoprostol, as a medical option for terminating a pregnancy up to ten weeks. According to the FDA, this medication, commonly known as the abortion pill, "has been increasingly used as its efficacy and safety have become well-established by both research and experience, and serious complications have proven to be extremely rare."[1] Indeed, over the past 18 years, more than 3 million women in the United States have used Mifeprex to end an early pregnancy.

This case is about where a woman must be standing when she receives the Mifeprex pill her health care provider has prescribed for her.

---

[1] U.S. Food & Drug Admin., Ctr. for Drug Evaluation & Research, 020687Orig1s020, Mifeprex Medical Review(s) 12 (Mar. 29, 2016), attached to the Complaint as Ex. A.

Mifeprex is safe. The FDA concluded in March 2016 that serious adverse events following Mifeprex use are "exceedingly rare" and that "the numbers of these adverse events appear to be stable or decreased over time."[2] The FDA also recognizes that Mifeprex provides a meaningful therapeutic benefit to patients seeking to end an early pregnancy using pills rather than a surgical procedure. Nevertheless, the FDA subjects Mifeprex to a Risk Evaluation and Mitigation Strategy ("**REMS**") that burdens health care providers and limits patient access to this pill with no medical benefit.

A REMS is a set of requirements beyond the approved prescribing information that the FDA may impose under the federal Food, Drug, and Cosmetic Act ("**FDCA**") when, and only when, necessary to ensure that a drug's benefits outweigh its risks. 21 U.S.C. § 355-1(a)(1). The most burdensome type of REMS are "Elements to Assure Safe Use" ("**ETASU**"), which the FDA may impose only when necessary because of the "inherent toxicity or potential harmfulness" of a drug, and only when certain other statutory criteria are met. *Id.* § 355-1(f)(1). In light of these stringent statutory limitations, only a small fraction of the prescription drugs and biological products currently approved by the FDA are subject to a REMS,

---

[2] *Id.*, Compl. Ex. A, at 47.

and even fewer are subject to a REMS *with* ETASU.[3]

In violation of the FDCA, Mifeprex is subject to a REMS with ETASU that significantly restricts how it can be distributed without any corresponding medical benefit to the patient. Specifically, although a patient can self-administer Mifeprex at home, the Mifeprex REMS provides that she cannot obtain the medication by prescription at a retail pharmacy, as is the normal course for most drugs. Instead, she must be handed the medication at a clinic, medical office, or hospital under the supervision of a health care provider who has registered with the drug manufacturer, attested to their ability to safely prescribe Mifeprex, and then arranged to order and stock Mifeprex in their health care facility. In addition, the patient must sign a "Patient Agreement" form containing outdated information.

Thus, a woman who turns to her trusted local health care provider with an unwanted pregnancy and requests a medication abortion cannot obtain that care unless the clinician has already registered with the drug manufacturer and arranged to stock the drug. But, for many health care providers across the country, registering with the drug manufacturer and

---

[3] U.S. Food & Drug Admin., Approved Risk Evaluation and Mitigation Strategies (REMS), *available at* https://www.accessdata.fda.gov/scripts/cder/rems/index.cfm?event=RemsData.page (last accessed April 2, 2019).

stocking Mifeprex at their office is difficult or impossible.

The Mifeprex REMS provides no safety benefit. Indeed, the REMS does not require that a patient *take* the medication at one of these designated health care facilities; as long as the drug is dispensed at an authorized medical setting, she may take it with her for later use at home.

At the same time, the Mifeprex REMS causes significant harm to patients. When a woman seeks a medication abortion and her clinician cannot provide her with timely care because of the REMS, at best, she will be forced to delay her abortion while she makes an additional, medically unnecessary trip to another health care facility that has the medication on hand. This delay may push her past the point in pregnancy when medication abortion is available, necessitating a more invasive surgical procedure instead. At worst, she will be unable to obtain any abortion care at all, and will instead be forced to carry a pregnancy to term against her will. Women in the most rural and medically underserved areas of the country—such as Kauaʻi, where Plaintiff Graham Chelius's patients live a flight away from the nearest abortion provider—suffer particular harm.

In *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), *as revised* (June 27, 2016), the U.S. Supreme Court held that an abortion restriction purportedly designed to protect patient health must actually do so,

5

and that any medical benefit must outweigh the burden on patient access. The Mifeprex REMS, which harms patient health by impeding access to care with no countervailing safety benefit, fails this standard. Moreover, the Mifeprex REMS does not meet the statutory criteria set out in the FDCA.

This action is for declaratory and injunctive relief arising out of Defendants' violations of Plaintiffs'[4], Plaintiffs' members', and Plaintiffs' members' patients' rights to liberty and privacy as guaranteed by the due process clause of the Fifth Amendment to the U.S. Constitution, because the Mifeprex REMS imposes significant burdens on abortion access that are not justified by the purported benefits, thereby imposing an undue burden on a woman's right to abortion (Count I). This action also seeks declaratory and injunctive relief arising out of Defendants' violations of Plaintiffs', Plaintiffs' members, and Plaintiffs' members' patients' right to equal protection of the laws under the Fifth Amendment to the U.S. Constitution by treating Plaintiffs, Plaintiffs' members, and Plaintiffs' members' patients

---

[4] Plaintiffs include (1) Dr. Graham T. Chelius, M.D., a family medicine physician with a focus in obstetrics practicing on Kauaʻi, (2) the Society of Family Planning, a Pennsylvania-based non-profit national association of clinician-researchers with expertise in family planning, (3) the California Academy of Family Physicians, the largest primary care medical society in California and the largest chapter of the American Academy of Family Physicians, and (4) Pharmacists Planning Services Inc., a California-based non-profit member association with hundreds of independent member pharmacists and pharmacies across the country.

differently from other similarly situated parties without a sufficient state interest (Count II).

In addition, this action seeks declaratory and injunctive relief arising out of the FDA's violations of the Administrative Procedure Act by taking final agency action for which Plaintiffs have no other adequate remedy, and that is (a) contrary to Plaintiffs', Plaintiffs' members', and Plaintiffs' members' patients' constitutional rights (Count III), (b) in excess of Defendants' statutory authority under the FDCA in violation of 5 U.S.C. § 706(2)(C) (Count IV), and (c) arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A) (Count V).

## II.     Statement of Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' federal claims under Article III of the Constitution and 28 U.S.C. § 1331, as a civil action arising under the laws of the United States; 28 U.S.C. § 1346(a)(2), as a civil action against the federal government; 28 U.S.C. § 1343(a)(4), as a civil action to secure equitable or other relief under any Act of Congress providing for the protection of civil rights; and 5 U.S.C. § 702, as a civil action seeking judicial review of a final agency action.

Plaintiffs' action for declaratory and injunctive relief is authorized by

28 U.S.C. §§ 2201, 2202, and 1361, Federal Rules of Civil Procedure ("*FRCP*") Rules 57 and 65, and by the inherent equitable powers of this Court. In addition, venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b) and (e)(1), and 1402(a)(1), because this is a civil action in which Defendants are an agency, or officers of an agency, of the United States, because a substantial part of the events or omissions giving rise to this action occurred in the District, and because Plaintiff Chelius resides in the District.

On February 5, 2018, Defendants filed a motion to dismiss pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction, asserting that Plaintiffs did not have standing to pursue this matter. (Doc. Nos. 30 & 30-1). On May 18, 2018, Defendants filed a notice withdrawing their motion to dismiss and acknowledging that Plaintiffs had met their threshold burden to establish standing. (Doc. No. 40). Accordingly, the oral argument scheduled for July 1, 2018, on Defendants' motion was vacated. (Doc. No. 41).

### III.   **Demand for Jury Trial**

Plaintiffs do not demand a jury trial.

### IV.   **Disclosures**

Initial disclosures are generally required where, as here, the plaintiffs bring constitutional claims. However, in light of the Parties' agreement limiting the scope of discovery in advance of cross-motions for summary

judgment, *see infra*, the Parties do not believe that disclosures are necessary at this time. Accordingly, the Parties respectfully request an Order from the Court relieving them of the disclosure obligations pursuant to FRCP 26(a)(1)(A) until the resolution of the Parties' anticipated cross-motions for summary judgment. Should the Court order a trial on the merits, the Parties request an opportunity to confer with each other and with the Court regarding the need for disclosures at such time.

**V. Discovery Completed, Discovery in Progress, Motions Pending**

No discovery or motions are pending at this time, and no discovery has been completed. Defendants provided an initial version of the administrative record ("AR") to Plaintiffs on July 9, 2018. Since then, the Parties have met and conferred extensively regarding the scope of the AR, the submission of extra-record evidence on Plaintiffs' constitutional claims, and related matters. The Parties have now reached an agreement on virtually all disputed matters ("The Agreement"). The Parties seek the Court's guidance on one outstanding issue: a timeframe for Defendants' production of emails and a privilege log, as described below in subsection (E).

The Agreement is summarized as follows:

*A. Discovery and Extra-Record Evidence*

The Parties believe this case can and should be resolved on cross-

motions for summary judgment. Unless otherwise ordered by this Court, the Parties have agreed not to seek any discovery against any of the Parties, their members, agents, or employees, or any other witness. The Parties have further agreed not to oppose other Parties' efforts to present extra-record declarations to support or rebut the constitutional claims, although the Parties have not agreed to refrain from challenging the admissibility or substance of any declarations on bases other than the documents being extra-record. Should the Court order a trial on the merits, the Parties may renegotiate the terms of the Agreement regarding discovery.

### B. Additions to the AR

Defendants have agreed to add five documents to the AR.

### C. Redaction of FDA Employee Names in the AR

Defendants redacted from the AR the names and offices of all FDA employees involved in the Mifeprex review process out of fear of danger to the health and/or safety of such employees due to the violence and harassment surrounding the provision of abortion. Defendants were unwilling to provide these employee names to Plaintiffs even subject to a protective order.

In lieu of the employee names, Plaintiffs have agreed to accept a declaration from an FDA official, subject in part to a protective order (still

under negotiation and to be filed for entry with this Court), containing certain information about the Mifeprex review process, including the role of political appointees. Defendants have agreed to provide Plaintiffs with a confidential draft of that declaration by May 3, 2019. If the Parties are unable to agree on language for the declaration that satisfies the Agreement, the Parties have agreed that this section of the Agreement will be null and the Parties may raise the dispute with the Court, but the remainder of the Agreement will remain in effect.

### D. Other Redactions in the AR

Defendants have agreed to provide Plaintiffs with additional information regarding the reasons for and substance of several redactions in the AR by May 3, 2019. Plaintiffs have reserved the right to move for *in camera review* to determine the validity of such redactions, and Defendants have reserved the right to oppose such review.

### E. Defendants' Production of Emails and Privilege Log

As part of this broader compromise, Defendants have agreed to provide Plaintiffs with non-privileged emails and attachments, and a privilege log for all privileged documents, for the three-month period of January–March 2016. The Parties have not agreed on a timeframe for such production and intend to raise the matter with the Court at the scheduling

conference.

## VI. <u>Special Procedures</u>

No special procedures are contemplated at this time.

## VII. <u>Any Related Cases</u>

Plaintiffs are not aware of any related cases.

## VIII. <u>Any Additional Matters</u>

Plaintiffs are not aware of any additional matters that need to be raised at this time.

Dated: Honolulu, Hawai'i, April 3, 2019.

                Respectfully submitted,

                <u>/s/ Mateo Caballero</u>
                MATEO CABALLERO
                ACLU of Hawai'i Foundation

                JULIA KAYE
                SUSAN TALCOTT CAMP
                American Civil Liberties Union Foundation

                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF</u>:

Mary M. Englehart        Megan.Englehart@usdoj.gov        April 3, 2019

*Attorney for Defendants*

                                                /s/ Mateo Caballero
                                                MATEO CABALLERO

                                                ACLU of Hawaiʻi Foundation
                                                *Attorney for Plaintiffs*