JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

GUSTAV EYLER
Acting Director

MARY M. ENGLEHART
Trial Attorney
Maryland Bar #0712110232
Consumer Protection Branch
United States Department of Justice
450 Fifth St., N.W., Suite 6400 South
Washington, DC 20530
Tele: 202-307-0088/Fax: 202-514-8742
Megan.Englehart@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| GRAHAM T. CHELIUS, M.D., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> ALEX M. AZAR, II, M.D., M.P.H., *in his official capacity as* SECRETARY, U.S. D.H.H.S., *et al.*, <br><br> Defendants. | CIV. NO. 1:17-cv-00493-DKW-KSC <br><br> **DEFENDANTS' SECOND RULE 16 SCHEDULING CONFERENCE STATEMENT** |

# DEFENDANTS' RULE 16 SCHEDULING CONFERENCE STATEMENT

Pursuant to Rule 16.2(b) of the Local Rules of Practice for the United States District Court for the District of Hawaii, Defendants Don J. Wright, M.D., M.P.H., *et al.* ("Defendants") submit the following statement:

## I. Short Statement of the Nature of the Case

Plaintiffs' lawsuit challenges the U.S. Food and Drug Administration's (FDA) decision to impose Risk Evaluation and Mitigation Strategies (REMS) with Elements to Assure Safe Use (ETASU) on Mifeprex (mifepristone), a drug that, when taken in a regimen with misoprostol, can terminate an early pregnancy without surgery.

Under the Federal Food, Drug, and Cosmetic Act (FDCA), FDA has the authority to impose REMS where "necessary to ensure that the benefits of a drug outweigh [its] risks . . . ." 21 U.S.C. § 355-1(a)(1). Similarly, the FDCA authorizes FDA to impose ETASU where "necessary to assure safe use of the drug, because of its inherent toxicity or potential harmfulness," id. § 355-1(f)(1). In 2000, in conjunction with its approval of a new drug application for Mifeprex, FDA properly exercised its authority to impose what later became ETASU[1] on the

---

[1] Mifeprex was approved in 2000 pursuant to Subpart H of the implementing regulations of the FDCA. Subsequently, the Food and Drug Administration Amendments Act of 2007 gave FDA the authority to require a REMS from manufacturers to ensure that the benefits of a drug outweigh its risks. FDA deemed Mifeprex to have a REMS in effect at the time these Amendments were enacted, and Mifeprex has had an approved REMS since 2011.

2

drug, given the substantial health risks—including serious and sometimes fatal infections and bleeding—associated with the drug. The conditions imposed at the time of Mifeprex's approval in 2000, which are substantively very similar to the ETASU that FDA renewed in 2011 and again in 2016, are as follows:

(1) A Medication Guide must be dispensed with each Mifeprex prescription;

(2) Clinicians prescribing Mifeprex must certify that they meet certain qualifications (including that they have the ability to date a pregnancy; have the ability to diagnose an ectopic pregnancy; have made plans for the patient to receive surgical abortion care in cases of incomplete abortion or severe bleeding, and to ensure the patient has access to medical facilities equipped to provide blood transfusions and resuscitation, if necessary) and that they will follow the guidelines outlined in the Prescriber's Agreement;

(3) Mifeprex may be dispensed only in clinics, medical offices, and hospitals by a prescriber certified with the manufacturer (as detailed in (2), above);

(4) Mifeprex may be dispensed only to a patient who has completed and signed a Patient Agreement form;

(5) Distributors may only ship Mifeprex to certified prescribers; and

(6) The manufacturer of Mifeprex must submit REMS assessments at regular intervals.

FDA imposed these REMS with ETASU with the important goal of mitigating the risk of serious complications associated with Mifeprex. These REMS with ETASU seek to achieve that goal by requiring healthcare providers who prescribe Mifeprex to be certified in the Mifeprex REMS Program, ensuring that Mifeprex is only dispensed in certain healthcare settings by or under the

supervision of a certified prescriber, and informing patients about the risk of serious complications associated with Mifeprex.

Plaintiffs claim the Mifeprex REMS with ETASU (1) violate their patients' and members' due process rights to liberty and privacy by assertedly placing undue burdens on access to abortion; (2) violate their patients' and members' equal protection rights by assertedly treating them differently; and (3) violate the Administrative Procedure Act (APA) because FDA's 2016 reauthorization of the REMS assertedly was contrary to the 5th Amendment, exceeded the agency's statutory authority, and was arbitrary, capricious, an abuse of discretion, and otherwise unlawful.

Plaintiffs seek a declaration that the Mifeprex REMS as a whole violates the 5th Amendment and/or the APA, or that specific ETASU violate the 5th Amendment and/or the APA; an injunction prohibiting Defendants from requiring a REMS for Mifeprex; a remand to FDA to remove the Mifeprex REMS; and costs and attorneys' fees.

## II.  **Statement of Jurisdiction**

This Court has subject matter jurisdiction over Plaintiffs' federal claims under Article III of the Constitution and 28 U.S.C. § 1331, as a civil action arising under the laws of the United States; 28 U.S.C. § 1346(a)(2), as a civil action

against the federal government; and 5 U.S.C. § 702, as a civil action seeking judicial review of a final agency action.

Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b) and (e)(1), and 1402(a)(1), because this is a civil action in which Defendants are an agency, or officers of an agency, of the United States, and because a substantial part of the events or omissions giving rise to this action occurred in the District.

On February 5, 2018, Defendants filed a motion to dismiss pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction, asserting that Plaintiffs did not have standing to pursue this matter. (Doc. Nos. 30 & 30-1). On April 12, 2018, Plaintiffs filed an opposition to Defendants' motion to dismiss, along with five declarations from members of Plaintiff-Organizations specifying in greater detail the basis for Plaintiffs' standing. On May 18, 2018, Defendants filed a notice withdrawing their motion to dismiss, acknowledging that, through their opposition brief and attached declarations, Plaintiffs had met their threshold burden to establish standing. (Doc. No. 40). Accordingly, the oral argument scheduled for July 1, 2018, on Defendants' motion was vacated. (Doc. No. 41).

### III. <u>Demand for Jury Trial</u>

Defendants do not demand a jury trial.

## IV. Disclosures

Given the Parties' agreement limiting discovery in advance of cross-motions for summary judgment, see *infra*, the Parties do not believe that disclosures are necessary at this time. Accordingly, the Parties respectfully request an Order from the Court relieving them of the disclosure obligations pursuant to FRCP 26(a)(1)(A) until the resolution of the Parties' anticipated cross-motions for summary judgment. Should the Court order a trial on the merits, the Parties request an opportunity to confer with each other and with the Court regarding the need for disclosures at such time.[2]

## V. Discovery Completed, Discovery in Progress, Motions Pending

There are no discovery motions pending. Judicial review of challenges to agency action, such as Plaintiffs', are typically limited to review of an administrative record. As such, Defendants provided an administrative record ("AR") to Plaintiffs on July 9, 2018.

Since then, the Parties have met and conferred extensively regarding the scope of the AR, the potential submission of extra-record evidence pertaining to

---

[2] Defendants reserve the right to argue that judicial review of all of Plaintiffs' claims is limited to the administrative record, subject to certain narrow exceptions. As such, discovery may be unnecessary in this action and this action may be exempt from the initial disclosure requirements contained in Rule 26 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 26(a)(1)(B)(i).

Plaintiffs' constitutional claims, and related matters. The Parties have now reached an agreement on virtually all disputed matters ("The Agreement", as summarized in Plaintiffs Second Rule 16 Scheduling Conference Statement, ECF 50). One outstanding issue remains in dispute: a timeframe for Defendants' production of emails and an accompanying privilege log. The Parties have not agreed on a timeframe for such production and intend to raise the matter with the Court at the scheduling conference.

FDA has been, for some time, diligently working to assess and gather the electronic documents requested by Plaintiffs. For reasons the government is prepared to discuss more fully at the conference, the production process is expected to take several months. This is due primarily to the number of potential document custodians identified—over one hundred individuals so far—and due to a related citizen's petition response that FDA undertook contemporaneously with the decision at issue in this case. The deliberations leading to FDA's lengthy citizen's petition response involved many of the same FDA personnel and terminology involved in the decision at issue here. Hence, additional time and resources are needed to differentiate among false positive search results and those that are actually responsive to Plaintiff's requests.

## VI.  Special Procedures

Defendants do not contemplate any special procedures at this time.

## VII. Any Related Cases

Defendants are not aware of any related cases.

## VIII. Any Additional Matters

Defendants are not aware of any additional matters that need to be raised at this time.

Dated: April 3, 2019.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

GUSTAV EYLER
Acting Director

/s/ Mary M. Englehart
MARY M. ENGLEHART
Trial Attorney, USDOJ

*Attorneys for Defendants*