IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GRAHAM T. CHELIUS, M.D., et al., | CIV. NO. 17-00493 JAO-RT |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS |
| vs. | |
| XAVIER BECERRA, J.D., in his official capacity as SECRETARY, U.S. D.H.H.S., et al., | |
| Defendants. | |

**ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS**

Defendants Xavier Becerra, J.D., in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), and Robert M. Califf, in his official capacity as Commissioner of Food and Drugs, United States Food and Drug Administration ("FDA") (collectively, "Defendants"), move to stay the proceedings in this drug regulation case pending the outcomes of two parallel litigations. ECF No. 171 (Motion to Stay Proceedings); ECF No. 184 (Letter Brief supplementing Motion to Stay). Plaintiff Graham T. Chelius, M.D., on behalf of himself and his patients, as well as Plaintiffs Society of Family Planning and California Academy of Family Physicians, on behalf of their respective members and patients (collectively, "Plaintiffs"), oppose the requested stays. ECF Nos. 173,

186.  The Court DENIES Defendants' Motion because a stay pending either

parallel litigation is not warranted under the circumstances of this case.

## I.  BACKGROUND

Plaintiffs principally challenge the FDA's Risk Evaluation and Mitigation

Strategy ("REMS") for mifepristone, a drug used in its generic and brand name

forms as a regimen for early-term medication abortions.  A "REMS" is a special

set of safety regulations that goes above and beyond standard safety measures

when "necessary to ensure that the benefits of a drug outweigh [its] risks."  ECF

No. 1 at 3 (quoting and altering 21 U.S.C. § 355-1(a)(1)).  Plaintiffs filed their

original complaint on October 3, 2017, claiming among other things that the

FDA's 2016 version of the REMS was overburdensome relative to mifepristone's

minimal health risks and, therefore, that the 2016 REMS exceeded the FDA's

statutory authority under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C.

§ 355-1(a)(1), amounting to a violation of the Administrative Procedure Act

("APA"), 5 U.S.C. § 706(2).  ECF No. 1 at 60–61.

From early 2018 to spring 2021, the parties litigated various motions

concerning the original complaint.  Defendants moved to dismiss the complaint in

February 2018, ECF No. 30, and subsequently withdrew that motion given

Plaintiffs' clarifying responses on issues of organizational standing, *see* ECF No.

40.  The parties filed cross-motions for summary judgment in December 2019,

ECF Nos. 86 and 89, but the Court had no occasion to decide those motions prior to entering a stay awaiting the Supreme Court's impending decision in a pertinent abortion-access case, *June Med. Servs. L. L. C. v. Russo*, 18-1323 (petition for cert. filed Apr. 17, 2019). ECF No. 107 (January 2020 Entering Order staying this case pending *June*, over Plaintiffs' objections). *June* was argued in March 2020 and decided in June 2020. *See* 140 S. Ct. 2103.

Before this Court could lift the stay and resume summary judgment briefing, the parties jointly requested continuing upcoming deadlines until after the Supreme Court's impending decision in a case on its emergency docket, *FDA v. Am. Coll. of Obstetricians & Gynecologists*, No. 20A34 (appl. for stay filed Aug. 26, 2020) ("*ACOG*"). ECF No. 115 (September 2020 Joint Request for Continuance of Status Conference). Following the Supreme Court's January 2021 grant of the application for stay in *ACOG*, 141 S. Ct. 578, this Court lifted the stay in this case and ordered the parties to revise and resubmit their cross-motions for summary judgment. *See* ECF No. 128. Plaintiffs did so in April 2021. ECF No. 141. Defendants were required to resubmit by mid-May 2021. ECF No. 130.

Prior to that deadline, however, the FDA took two intervening actions prompting a second stay of the proceedings. First, on April 12, 2021, the FDA announced that it would exercise discretion to enforce one component of the mifepristone REMS being challenged by Plaintiffs, for the duration of the COVID-

3

19 public health emergency.  *See* ECF No. 148 at 2–3; ECF No. 169-1 at 6.  And second, in early May 2021, the FDA notified Plaintiffs that it was undertaking a fresh review of the mifepristone REMS and would consider any relevant data and evidence submitted by Plaintiffs during that review.  *See* ECF No. 148 at 2.  The parties jointly agreed to stay this action pending the FDA's 2021 review, *id.*, and the Court ordered so, ECF No. 149.

The 2021 review resulted in the FDA issuing an updated mifepristone REMS in January 2023, *see* ECF No. 157 at 5, after which the Court lifted the second stay of this case, ECF No. 158.  Plaintiffs filed their Amended and Supplemental Complaint on April 10, 2023, challenging the 2023 REMS by claiming among other things that the updated REMS are still overburdensome relative to mifepristone's health risks and thus still exceed the FDA's authority under the FDCA.  ECF No. 169 at 92.  Plaintiffs request declaratory relief—declarations that the REMS violates the Constitution and the APA—as well as injunctive relief—enjoining Defendants from requiring a REMS and/or remanding to the FDA with instructions to remove the REMS.  *Id.* at 94–95.

Just when the parties were set to litigate the Amended and Supplemental Complaint, they once again took a pause to contemplate another stay of the proceedings:  on May 4, 2023, Defendants moved for a stay pending the parallel mifepristone litigation in *Alliance for Hippocratic Medicine v. FDA*, No. 2:22-CV-

4

223-Z (N.D. Tex. filed Nov. 18, 2022).  ECF No. 171.  Plaintiffs submitted an

Opposition to that Motion, ECF No. 173, Defendants submitted a Reply, ECF No.

175, and Plaintiffs submitted a Sur-Reply, ECF No. 180.  The Court heard

arguments on June 15, 2023.  ECF No. 182.  Following those arguments, the Court

directed Defendants to indicate in a letter whether they support staying this action

pending another parallel mifepristone litigation, *Washington v. FDA*, No. 1:23-cv-

3026-TOR (E.D. Wash. filed Feb. 23, 2023).  Defendants support such a stay, ECF

No. 184, while Plaintiffs do not, ECF No. 186.  *See also* ECF No. 189

(Defendants' Reply Letter further advocating for a stay based on *Washington*).

The *Alliance* and *Washington* litigations are summarized below.

## A.    The *Alliance* Litigation

The plaintiffs in the *Alliance* litigation are physicians providing pregnancy-

related health care, including emergency care after unsuccessful medication

abortions, and national associations of such physicians.  *See* No. 2:22-CV-223-Z,

ECF No. 1 at 8–12.  They assert APA challenges to the FDA's original approval of

mifepristone as a medication abortion regimen and the FDA's post-approval

abatement of the REMS from March 2016 to December 2021.  *See id.* at 94–111.

Their allegations of a lax mifepristone regime include, for example, that the FDA's

2021 enforcement-discretion decision lacked legal authority, *see id.* at 107–08, and

that all of the FDA's actions concerning mifepristone are contrary to the Comstock

Act, 18 U.S.C. §§ 1461, 1462, which allegedly "prohibit[s] the distribution of chemical abortion drugs by postal mail, express company, or common carrier," *id.* at 6–7.

The *Alliance* plaintiffs sought a preliminary injunction directing the FDA to withdraw or suspend its approval of mifepristone or, alternatively, to withdraw or suspend its post-approval abatement of the REMS.  No. 2:22-CV-223-Z, ECF No. 6 at 2.  The United States District Court for the Northern District of Texas, Judge Matthew J. Kacsmaryk, granted the requested nationwide injunction by "stay[ing] the effective date of FDA's [approval] of mifepristone and all subsequent challenged actions related to that approval."  *Alliance*, 2023 WL 2825871, at *32 (N.D. Tex. Apr. 7, 2023).  The district court "stayed" its "stay," i.e., its preliminary injunction, for seven days to allow for an emergency appeal to the United States Court of Appeals for the Fifth Circuit.  *Id.*

The Fifth Circuit granted in part and denied in part the *Alliance* defendants' emergency motions for stays pending appeal of the preliminary injunction. *Alliance*, 2023 WL 2913725, at *21 (5th Cir. Apr. 12, 2023) (unpublished, per curiam order).  More specifically, the Fifth Circuit stayed the portion of the preliminary injunction "stay[ing]" the approval of mifepristone because the plaintiffs' challenges to that approval were likely time-barred.  *See id.* at 11–15,

21.  The Fifth Circuit declined to stay the remainder of the preliminary injunction, leaving in place the "stay" of the FDA's REMS modifications.  *See id.* at 21.

The *Alliance* defendants promptly filed emergency applications for stays with the Supreme Court; soon after, Justice Samuel A. Alito, Jr., administratively granted the applications for stays for a period of eight days.  *See, e.g.*, *FDA v. Alliance for Hippocratic Med.*, 2023 WL 2942266 (U.S. Apr. 14, 2023) (Alito, J., in chambers); *FDA v. Alliance for Hippocratic Med.*, 2023 WL 2996931 (U.S. Apr. 19, 2023) (Alito, J., in chambers).  On April 21, 2023, the Supreme Court granted the applications for stays "pending disposition of the appeal in the [Fifth Circuit] and disposition of a petition for a writ of certiorari, if such a writ is timely sought."  *Danco Lab'ys, LLC v. Alliance for Hippocratic Med.*, 143 S. Ct. 1075 (2023).

Litigation then resumed at the Fifth Circuit.  Appellate briefing concluded on May 12, and oral arguments were held on May 17.  *See Alliance*, No. 23-10362, ECF Nos. 452, 530.  As of the date of this Order, the Fifth Circuit has yet to issue a decision on the appeal of the preliminary injunction.

## B.    The *Washington* Litigation

The plaintiffs in the *Washington* litigation—which commenced in February 2023—are several states, including the State of Hawaiʻi, suing on behalf of themselves and as *parens patriae* in protecting the health and well-being of their

residents.  *See* No. 1:23-cv-3026-TOR, ECF No. 35 at 6–18 .  They claim that the

FDA's 2023 REMS are contrary to the FDCA and thus violate the APA.  *See id.* at

41–44, 88–89.  They request declaratory relief and injunctive relief, such as an

injunction prohibiting the defendants (including the FDA) from enforcing or

applying the mifepristone REMS.  *Id.* at 90.

The *Washington* plaintiffs sought a preliminary injunction enjoining the

defendants from enforcing the 2023 REMS and from taking any actions to reduce

the availability of mifepristone.  ECF No. 3.  The United States District Court for

the Eastern District of Washington, Judge Thomas O. Rice, construed the

preliminary injunction as a request to preserve the status quo of mifepristone

availability.  *See Washington*, 2023 WL 2825861, at *10 (E.D. Wash. Apr. 7,

2023).  The district court granted the requested injunctive relief, enjoining the

defendants from "altering the status or rights of the parties under the operative

Mifepristone REMS Program until a determination on the merits."  *Id.*  That

injunction covers the FDA's actions in the plaintiff states, including in the State of

Hawaiʻi, but not the FDA's actions nationwide.  *See id.*

Following its order granting the preliminary injunction, the district court set

the following deadlines in *Washington*:  defendants must produce the

administrative record at issue by September 1, 2023, ECF No. 119, and the parties

must file a joint status report two weeks after any ruling on motions for summary

judgment, wherein the parties propose a deadline for defendants to answer the operative complaint, ECF No. 122.  The court has not set a deadline for summary judgment motions.

## II.   LEGAL STANDARD

"A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254 [(1936)]." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  A "*Landis* stay" may be appropriate where, for example, the result of a separate proceeding has some bearing upon the district court case.  *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion[, a district court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same."  (citing *Landis*, 299 U.S. at 248)); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).  "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Levya*, 593 F.2d at 863–64.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis*, 299 U.S. at 254.

When deciding whether to grant a *Landis* stay, courts must weigh the parties' competing interests, including "[(1)] the possible damage which may result from the granting of a stay, [(2)] the hardship or inequity which a party may suffer in being required to go forward, and [(3)] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 248); *accord Lockyer*, 398 F.3d at 1110. "[T]he [movant] for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255; *see also id.* ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). In addition, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. For that reason, a *Landis* stay should not be "indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

## III.   DISCUSSION

The Court finds that the requested stays pending the *Alliance* and

*Washington* litigations are not warranted under the circumstances of this case.   The

Court addresses each requested stay in turn.

### A.   Stay Pending the *Alliance* Litigation

Defendants request a stay pending resolution of "all appellate avenues" in

*Alliance*, ECF No. 171 at 4, which the Court interprets as a request for a stay

pending the Fifth Circuit's decision on the preliminary injunction and any related

decision from the Supreme Court pursuant to a writ of certiorari.   The Court

declines to stay this case pending *Alliance* for two reasons:   such a stay would

cause unreasonable delay in adjudicating Plaintiffs' claims, and such a stay is

contrary to the weight of the parties' competing interests.

Starting with unreasonable delay, assuming the Fifth Circuit issues a

decision in the next couple of months and assuming a subsequent petition for and

grant of a writ of certiorari, the Supreme Court is unlikely to issue a decision until

the latter half of the 2024–2025 term, between March and July 2025.   That

prolonged timeline is necessary for the preliminary litigation preceding every

merits decision from the Supreme Court:   following a federal court of appeals'

entry of judgment,[1] there is a 90-day period during which the losing party may file a petition for writ of certiorari, a multi-month briefing process on that petition, a voting process for certiorari, briefing on the merits, calendaring of the argument for a date between only October and April, and after argument, the Supreme Court writing and issuing its decision.  *See* Sup. Ct. Rs. 13.1, 15.3, 15.6, 16.1, 16.2, 25.1–3, 41; *About Federal Courts — Supreme Court Procedures*, United States Courts (last visited July 28, 2023), https://perma.cc/7N8E-NZ4S ("The Court hears oral arguments in cases from October through April. . . .  All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer)."); *see also* Lee Epstein et. al., *The Best for Last*: *The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 1022 (2015) ("The mean time from oral argument to decision in the 7219 sample [set of Supreme Court cases] is 83.6 days (the median is 75), with a standard deviation of 46.2.").

In short, this Court finds that waiting to adjudicate Plaintiffs' claims until March 2025 at the earliest, or until July 2025 at the latest, is an unreasonable

---

[1]  The Supreme Court can consider a petition for writ of certiorari to review a case pending in a court of appeals before judgment is entered by that court of appeals if the petitioner shows that the case is "of such imperative public importance as to justify deviation from normal appellate practice and to require immediate determination in [the] Court."  Sup. Ct. R. 11.

period of delay.  True enough, the *Alliance* litigation could wrap up well in advance of March 2025 if the Fifth Circuit issues a decision that is not challenged in a cert. petition or if the Supreme Court denies cert.  But in those circumstances, a stay would reap merely a potentially persuasive precedent from the Fifth Circuit—not a binding precedent from the Supreme Court—substantially reducing any gains to judicial economy.  Thus, for all plausible resolutions of the *Alliance* litigation, staying this case is simply not worth the wait.  Either the delay is too long relative to the urgency of Plaintiffs' claims, or the delay is short but ultimately unhelpful to resolving Plaintiffs' claims.

Moreover, even assuming a reasonable delay, the Court finds that a *Landis* stay pending *Alliance* is disfavored by the competing-interest factors. Starting with the first factor—potential damage to Plaintiffs resulting from a stay— the Court agrees with Plaintiffs that they will likely incur significant damage if this action is stayed until 2025.  *See* ECF No. 173 at 25.  Plaintiffs' Amended and Supplemental Complaint lays out the harms allegedly afflicting Plaintiff doctors, organizations, members, and patients as a result of overly restrictive mifepristone regulations.  *See, e.g.*, ECF No. 169 at 79–91.  Requiring Plaintiffs to wait until 2025 to litigate their alleged harms would further compound the alleged prejudice caused by the prior stays and the prior scheduling continuance.  Although Plaintiffs consented to one of those prior stays and to the scheduling continuance, Plaintiffs

certainly would have preferred to litigate their claims sooner rather than later, absent the external circumstances prompting the prior stays, because justice delayed is justice denied, after all. *Cf.* ECF No. 173 at 26 ("Plaintiffs have presented [their alleged] harms directly to FDA twice, in 2016 and 2021 [administrative reviews], with FDA failing each time to consider the statutory requirement[s.]").  Given the compounding prejudice from prior delays, the Court finds that Plaintiffs will likely incur significant damage should they be forced to wait almost two more years to litigate their claims.

The second competing-interest factor—hardship or inequity to Defendants in moving forward—also disfavors a stay.  Defendants contend they will endure hardship by "being forced to litigate on at least two fronts and being subjected to the possibility of inconsistent rulings in the two actions."  ECF No. 175 at 15 (citation and quotation marks omitted).  Because the Court finds that Plaintiffs will likely incur significant damage from a stay, Defendants' hardship must be a "clear case."  The Court finds it is not.  Defendants' concern over "inconsistent rulings"

is mistaken and does not, therefore, constitute a "clear case" of hardship.[2]  Nor does Defendants' concern over simultaneous litigations.  *See Lockyer*, 398 F.3d at 1112 (holding, when analyzing a requested stay pending the defendants' concurrent litigation, that the defendants "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*"); *Espire Ads LLC v. Tapp Influencers Corp.*, 2023 WL 4247193, at *4 (C.D. Cal. May 10, 2023) ("[C]ourts often conclude that merely having to litigate two actions, and thereby incur the financial burden of a two-front war, is not sufficient to demonstrate a clear case of hardship."  (collecting cases)).

The third competing-interest factor is neutral.  That factor asks whether the resolution of the *Alliance* litigation would simplify (or complicate) the issues, proof, and questions of law in this case.  As mentioned above, it is possible the *Alliance* litigation ends without a decision from the Supreme Court.  If so, *Alliance*

---

[2]  The term "inconsistent rulings" implies a situation where two sister courts issue conflicting decisions on similar facts, neither of which controls the other.  If Defendants are concerned about an "inconsistent" Supreme Court decision in *Alliance*, they fail to realize that a Supreme Court decision cannot be "inconsistent" with this Court's decision—the former always binds (or overrules) the latter.  If concerned about a Fifth Circuit decision affirming Judge Kacsmaryk's injunction and on which the Supreme Court denies cert., Defendants effectively ask to close the stable door after the horse has bolted, because such a decision would already be facially inconsistent with Judge Rice's preliminary injunction.

would hardly simplify this case, as there would be no binding precedent from a higher court.

Assuming the Supreme Court does issue a decision in *Alliance*, it is doubtful whether that decision would simplify this case. The Supreme Court's decision would not provide clarity if, for example, it forgoes the merits and instead focuses on Article III jurisdiction. One indicator of jurisdictional uncertainty is the fact that the Fifth Circuit's *Alliance* order spends over a third of its discussion section on Article III standing. *See* 2023 WL 2913725, at *4–11. Another indicator is that the very Defendants in this case—FDA and HHS—begin their opening brief in the *Alliance* appeal by arguing that the plaintiffs lack Article III standing. *See* Brief of Federal Appellants, *Alliance for Hippocratic Med. v. FDA*, No. 23-10362, ECF No. 222 at 17, 34–49 (5th Cir. filed Apr. 26, 2023). Yet another is the skepticism expressed by numerous constitutional scholars concerning the *Alliance* plaintiffs' standing. *See, e.g.*, Debra Cassens Weiss, *One mifepristone decision 'runs roughshod' over procedural issues, the other 'is no better,' law profs say*, ABA Journal (Apr. 10, 2023), https://perma.cc/5U5U-44NU. Together, those indicia demonstrate considerable uncertainty as to whether the Supreme Court will reach the merits in *Alliance*.

Even if the Supreme Court reaches the merits of the *Alliance* preliminary injunction, there is no guarantee the Supreme Court's decision will simplify this

case.  This case would not be simplified by the Supreme Court vacating the preliminary injunction on the basis of overriding public interests or due to the lack of irreparable harm, i.e., preliminary injunction elements that do not concern the legality of the FDA's mifepristone regulations.  Similarly, there is minimal relevance in the Supreme Court vacating the preliminary injunction on the basis that the FDA's regulations are not so relaxed as to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).  Granted, such a decision would probably discuss the administrative law standards governing Plaintiffs' claims.  But such a decision would also likely lack analysis that is relevant to Plaintiffs' challenge that the FDA should be *even more relaxed* in restricting mifepristone—a question not necessarily answered when rejecting a challenge at the opposite end of the spectrum, that the FDA *was too lax* in restricting mifepristone.

An additional outcome is admittedly possible:  the Supreme Court issues a merits decision suggesting that the mifepristone restrictions didn't go far enough, in turn weakening Plaintiffs' claims of the opposite and providing some clarity to this case.  That potential outcome does not, however, outweigh the probability of the other outcomes, outlined above, in which the Court is left with an irrelevant *Alliance* decision.  Because there is considerable uncertainty as to whether a

Supreme Court decision in *Alliance* will simplify the case at bar, the third competing-interest factor is neutral, at best.

In sum, two competing-interest factors disfavor a stay, while one is neutral. The weight of those factors thus disfavors a stay pending the *Alliance* litigation. The Court declines to issue such a stay because of the weight of those factors and also because of unreasonable delay.

**B.    Stay Pending the *Washington* Litigation**

Defendants also move for a stay pending the *Washington* litigation, *see* ECF No. 184, which the Court construes as a request for a stay pending Judge Rice's summary judgment ruling, *see* ECF No. 189 at 4.[3]   The Court assumes that such a stay would be of a reasonable duration given how far along the *Washington* litigation is in the Eastern District of Washington.

---

[3]  Because summary judgment, not a trial, is normally the appropriate mechanism for reviewing the propriety of agency action under the APA, *see Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985), it is most reasonable to construe Defendants' request, ECF No. 184, as a request for a stay pending Judge Rice's summary judgment ruling.  *See also Proietti v. Levi*, 530 F.2d 836, 838 (9th Cir. 1976) ("De novo review of administrative decisions under the [APA] is proper only under a limited set of circumstances.").

To the extent Defendants request a stay pending resolution of the *Washington* litigation on appeal to the Ninth Circuit or to the Supreme Court, the Court rejects such a requested stay because it would require an unreasonable delay in adjudicating Plaintiffs' claims.  *See supra* Part III.A.

The problem with a stay pending *Washington* is that the competing-interest factors disfavor such a stay, just as they disfavor a stay pending *Alliance*. Although Plaintiffs' delay-induced prejudice is relatively limited given the timeline for Judge Rice's decision, so is Defendants' hardship in concurrently litigating *Washington*, a case Defendants admit is nearly identical to the case at bar, including with respect to the administrative records. *See* ECF No. 189 at 6 (describing *Washington* and this case as "considering the same claims [and] challenging the same agency action based on the same administrative record" (footnote omitted)). And so, Plaintiffs show a fair possibility of damage in being forced to wait for Judge Rice's decision, but Defendants fail to counter that showing with a clear case of hardship. *See Howell v. Leprino Foods Co.*, 2023 WL 4601042, at *4–6 (E.D. Cal. July 18, 2023) (denying stay where moving plaintiff would suffer minimal hardship) ("[I]f, as [plaintiff] claims, [the parallel litigations] raise issues similar to those in the instant case . . . , then the remaining briefing is likely to be relatively similar, suggesting that it would not pose an additional burden."); *Thomas More L. Ctr. v. Harris*, 2015 WL 13920257, at *1 (C.D. Cal. Aug. 18, 2015). The first two factors thus disfavor a stay.

The third factor is, once again, neutral. A summary judgment order from Judge Rice would undoubtedly be useful to this Court. But Judge Rice's order would not settle or control this case as a matter of law, unlike a relevant decision

from the Ninth Circuit or the Supreme Court.  So there is some usefulness in an order from Judge Rice, but it is far less than that of a binding, precedential authority.

Furthermore, the Court can benefit from Judge Rice's future order without staying this case for that order.  As directed below, the Court sets a schedule for this case that must necessarily lag the schedule in *Washington* given the timing of Defendants' Motion.  That lag decreases the chances that this Court and Judge Rice will issue inconsistent summary judgment orders within hours of each other, like ships passing in the night—the actual predicament Defendants warn against with their cry of "potentially conflicting orders," ECF No. 189 at 4–5.  What is not actually a predicament is this Court, or Judge Rice, issuing a ruling at odds with the other's decision after having the benefit of reviewing the other's decision. Such "conflicts" are an inherent feature of the federal judiciary, where issues ideally percolate among the district courts in service of better appellate presentations to the circuit courts and to the Supreme Court.[4]  *See New York v.*

---

[4]  In the event of actually conflicting orders, the parties before either Judge Rice or this Court could seek a stay that, if granted, would allow the Ninth Circuit to resolve appeals from both cases without enduring an inconsistent state of law. Although not ideal, such a procedure has been used before.  *See, e.g.*, *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (discussing the procedural history of conflicting "nationwide" injunctions and how the parties were forced to "leap[] from one emergency stay application to the next").

*Pruitt*, 2018 WL 2411595, at *4 (S.D.N.Y. May 29, 2018) ("It is a bedrock principle of our federal court system that the adjudication of novel and difficult issues of law is best served by letting questions percolate among the lower federal courts, even at the cost of short-term disuniformity.").

In sum, the first two competing-interest factors disfavor a stay, while the third is neutral, at best, given the inevitable scheduling lag in this case.  The Court declines to issue a stay pending *Washington*, given the weight of those factors.

///

///

///

///

///

///

///

///

///

///

///

///

///

## IV.   CONCLUSION

The Court DENIES Defendants' Motion to Stay Proceedings, ECF No. 171, and the related supplement to that Motion, ECF No. 184.  The Court SETS the following schedule for this case:  Defendants must supplement the administrative record at issue by October 1, 2023; after the parties meet and confer regarding whether the administrative record is complete (including whether "extra-record discovery" should be included, ECF No. 186 at 3), the parties must file a joint status report outlining their agreements and disagreements regarding the record by November 1, 2023; the Court will then set deadlines for resuming summary judgment briefing, if appropriate at that time.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, August 8, 2023.



Jill A. Otake
United States District Judge

CIV. NO. 17-00493 JAO-RT, *Chelius et al. v. Becerra et al.*; Order Denying Defendants' Motion to Stay Proceedings