**ACLU of Hawaii Foundation**
JONGWOOK "WOOKIE" KIM
11020
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
wkim@acluhawaii.org

**American Civil Liberties Union
Foundation**
LORIE CHAITEN*
1640 North Sedgwick Street
Chicago, IL 60614
T: (212) 549-2633
F: (212) 549-2650
lchaiten@aclu.org

**Arnold & Porter Kaye Scholer LLP**
JOHN A. FREEDMAN*
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
john.freedman@arnoldporter.com

**American Civil Liberties Union
Foundation**
JULIA KAYE*
JENNIFER DALVEN*
WHITNEY WHITE*
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2633
F: (212) 549-2650
jkaye@aclu.org
jdalven@aclu.org
wwhite@aclu.org

RACHEL REEVES*
**American Civil Liberties Union
Foundation**
915 15th Street NW
Washington, DC 20005
T: (212) 549-2633
F: (212) 549-2650
rreeves@aclu.org

*admitted pro hac vice*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| GRAHAM T. CHELIUS, M.D., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, J.D., *in his official capacity as* SECRETARY, U.S. D.H.H.S., *et al.*,<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 1-:17-cv-00493-JAO-RT<br><br>**MOTION TO COMPLETE OR, IN THE ALTERNATIVE, SUPPLEMENT THE RECORD** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................ ii

I.     INTRODUCTION................................................................1

II.    FACTUAL BACKGROUND ..........................................................3

    A. The Parameters of FDA's Review of the Scientific Evidence..................3

    B. The ACOG Petition................................................................5

III.   STANDARD OF REVIEW........................................................10

IV.   ARGUMENT ........................................................................11

    A. The Record Is Incomplete Without the Petition, Which Was Before
       the Agency and, at Minimum, Indirectly Considered. ........................... 11

    B. The ACOG Petition and Its References Are Necessary for This Court
       to Evaluate Whether FDA's Actions Were Arbitrary and Capricious.... 13

V.    CONCLUSION .........................................................................16

# TABLE OF AUTHORITIES

## Cases

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
  602 F.3d 1125 (9th Cir. 2010) .......................................................................... 3, 11

*Goffney v. Becerra*,
  995 F.3d 737 (9th Cir. 2021) ..................................................................... 10, 12, 13

*High Sierra Hikers Ass'n v. U.S. Dep't of the Interior*,
  No. C-09-4621 JCS, 2011 WL 2531138 (N.D. Cal. June 24, 2011) ............. 11, 14

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ....................................................................... 11, 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*
  463 U.S. 29 (1983) ............................................................................................... 14

*Pac. Choice Seafood Co. v. Ross*,
  976 F.3d 932 (9th Cir. 2020) .............................................................................. 10

*Portland Audubon Soc'y. v. Endangered Species Comm.*,
  984 F.2d 1534 (9th Cir. 1993) ..................................................................... *passim*

*Pub. Citizen v. Fed. Motor Carrier Safety Admin.*,
  374 F.3d 1209 (D.C. Cir. 2004) .......................................................................... 14

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir.1989) ........................................................................... 2, 10

*Trout Unlimited v. Lohn*,
  No. C05-1128C, 2006 WL 1207901 (W.D. Wash. May 4, 2006) ..................... 11

*Washington v. U.S. Food & Drug Admin.*,
  No. 1:23-CV-3026-TOR, 2023 WL 2825861 (E.D. Wash. Apr. 7, 2023) ........ 1, 2

## Statutes

5 U.S.C. § 706 .................................................................................................... 3, 10

21 U.S.C. § 355-1(a) ........................................................................................ 1, 4, 14

21 U.S.C. § 355-1(f)(2)(C) ............................................................................... 1, 4, 15

## I.    INTRODUCTION

On January 3, 2023, FDA issued the current Risk Evaluation and Mitigation Strategy ("REMS") for mifepristone. The same day, FDA denied a citizen petition from the American College of Obstetricians and Gynecologists ("ACOG") and nearly 50 other organizations, including Plaintiff Society of Family Planning, which asked FDA to, *inter alia*, "eliminate the REMS as medically unnecessary and unduly burdensome for uses of mifepristone." *Washington v. U.S. Food & Drug Admin.*, No. 1:23-CV-3026-TOR, 2023 WL 2825861, at *6 (E.D. Wash. Apr. 7, 2023). That 28-page petition ("ACOG Petition" or "Petition") included data showing that the REMS is unnecessary to ensure that the benefits of mifepristone outweigh its risks, 21 U.S.C. § 355-1(a), and that the Elements to Assure Safe Use ("ETASU") for mifepristone are "unduly burdensome on patient access," *id.* § 355-1(f)(2)(C).[1]

The Petition, the materials cited therein,[2] and FDA's denial ("Denial Letter")[3] are part of "'[t]he whole record'" on which this Court's review of Plaintiffs' Administrative Procedure Act ("APA") claims must be based. *Portland Audubon*

---

[1] Citizen Pet. from ACOG et al. to Lauren Roth, Assoc. Comm'r for Pol'y, Off. of the Comm'r, U.S. Food & Drug Admin. (Oct. 4, 2022) [hereinafter "ACOG Pet."], attached hereto as Ex. A, at 11–17.

[2] ACOG Pet. References, attached hereto as Ex. B.

[3] Letter from Patrizia A. Cavazzoni, M.D., Dir., Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., to Maureen G. Phipps, M.D., M.P.H., FACOG (Jan. 3, 2023) [hereinafter "Denial Letter"], attached hereto as Ex. C, at 1.

*Soc'y. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (quoting 5 U.S.C. § 706). Under Ninth Circuit precedent, "'[t]he whole record' includes everything that was before the agency pertaining to the merits of its decision." *Id.* (citing *Thompson v. U.S. Dep't of Labor,* 885 F.2d 551, 555–56 (9th Cir. 1989)). The Petition falls within that broad standard. It was submitted in October 2022, months before FDA "complet[ed]" its final mifepristone REMS review in January 2023 (ECF 169-1, at 1); *see also Washington*, 2023 WL 2825861, at *6 (describing ACOG Petition as among the relevant materials relating to the REMS "put forth before FDA"). Nor can there be any dispute that these materials were "directly or indirectly considered by agency decision-makers," *Thompson,* 885 F.2d at 555 (emphasis omitted), when FDA said in its Denial Letter: "*we have carefully considered the Petition*."[4] The Petition's citations likewise were at least "*indirectly considered*" by FDA, *Thompson*, 885 F.2d at 555 (emphasis in original), and so must be included—consistent with FDA's inclusion of the references for every other citizen petition and letter in the record.

Nevertheless, despite FDA's admission that it carefully considered the ACOG Petition, FDA's coordinated actions on the Petition and the REMS on January 3rd, and the broad standard for what encompasses "the whole record" under 5 U.S.C. § 706, FDA has refused to include the ACOG Petition, its references, and the Denial

---

[4] Denial Letter, Ex. C, at 1 (emphasis added).

Letter in the *Chelius* administrative record.[5] Because the record would be a "fictional account of the actual decisionmaking process" in the absence of these materials, *Portland Audubon Soc'y*, 984 F.2d at 1548 (citation and internal quotation marks omitted), Plaintiffs respectfully ask this Court to order FDA to complete the record.

Moreover, even if these materials were considered extra-record evidence, "[e]xpansion of the administrative record" is permissible when, *inter alia*, "necessary to determine if the agency has considered all factors." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). In this case, FDA's refusal to address highly relevant evidence discussed in the ACOG Petition—for instance, a study showing no increase in adverse events in Canada after that country eliminated its REMS-like restrictions on mifepristone—goes to the heart of Plaintiffs' APA claims. (ECF 169, at 92–93.) For that independent reason, too, supplementation is appropriate.

## II.     FACTUAL BACKGROUND

### A. The Parameters of FDA's Review of the Scientific Evidence

On December 16, 2021, FDA completed the first of two recent reviews assessing whether to eliminate or modify the mifepristone REMS. (ECF 169-2.)  In a section entitled "Evaluation of the Evidence," FDA explained that it "reviewed

---

[5] This motion is made following conferences of counsel pursuant to LR7.8, which took place on October 30, October 31, November 15, and November 22, 2023.

multiple different sources of information, including published literature, . . . and information provided by advocacy groups, individuals, and the [drug application holders]," as well as the "plaintiffs in the *Chelius* litigation." (ECF 169-2, at 10.) Literature references identified in FDA's search or provided by stakeholders were "inclu[ded] in [the agency's] review" only if they met certain "selection criteria." (ECF 169-2, at 11.) FDA provided examples of 11 categories of evidence that the agency excluded from its analysis of whether a REMS remains "necessary to ensure that the benefits of [mifepristone] outweigh the risks," 21 U.S.C. § 355-1(a). (ECF 169-2, at 11–12.) These exclusions included "qualitative studies," even those that specifically "assessed REMS ETASUs"; "data on the logistics of accessing abortion care," such as "distance traveled to obtain care," despite the statutory mandate that any ETASU not be "unduly burdensome on patient access to the drug, considering in particular . . . patients who have difficulty accessing health care (such as patients in rural or medically underserved areas)," *id.* § 355-1(f)(2)(C); and "[o]pinions, commentaries, or policy/advocacy statements," such as resolutions by ACOG, the American Medical Association ("AMA"), and the American Academy of Family Physicians ("AAFP") opposing the mifepristone REMS. (ECF 169-2, at 11–12.)

FDA also declined to consider "[p]ublications for which it was not possible to conduct a full review of the methods or results, i.e., the references were limited to an abstract of the study methods and results." (ECF 169-2, at 11, 45–49.) As a result,

despite being aware of a 2020 abstract by Laura Schummers et al. finding that "Canada's removal of REMS like restrictions . . . was not associated with increased abortion complications," FDA nowhere addressed it.[6] As detailed *infra*, FDA also failed to seek out the full results of Schummers et al.'s research, even though the same authors published a comprehensive study of the Canadian dataset just three weeks after FDA's December 2021 REMS Review was completed and a full year before the agency completed its second REMS Review.

FDA included in the administrative record all materials cited by a petition or letter, even if the agency excluded that citation from its substantive analysis.[7]

### B. The ACOG Petition

On October 22, 2022, ACOG and 48 other organizations, including AMA, AAFP, and the Society for Maternal-Fetal Medicine, submitted a citizen petition to FDA relating to mifepristone. The principal focus was on mifepristone's use for miscarriage. While mifepristone is already being used for this purpose—indeed, U.S. Department of Health and Human Services Secretary Xavier Becerra described mifepristone in June 2022 as part of the "gold standard for care when someone who's

---

[6] Laura Schummers et al., *Do Medication Abortion Complications Increase When Restrictive Risk Evaluation and Mitigation Strategy Regulations are Removed? A Population-Based Study Using Single-Payer Linked Health Administrative Data*, 102 Contraception 273 (2020) (2021 REMS 01172), attached hereto as Ex. D.

[7] *See generally* Admin. R. Certification & Decl. of Robert R. Herrell (Sept. 29, 2023) [hereinafter "AR Certification"], attached hereto as Ex. E.

5

pregnant experiences a miscarriage"[8]—such prescriptions are considered "off-label" because miscarriage treatment is not currently listed as an indicated usage in mifepristone's FDA-approved labeling.[9] The Petition requested that FDA (1) ask the holder of mifepristone's approved drug application to submit a request to add miscarriage management as an indication to the drug's label and to eliminate or modify the REMS, and (2) "immediately exercise enforcement discretion with respect to the use and distribution of mifepristone for miscarriage management without complying with the REMS."[10]

In support of these requests, the Petition cited extensive evidence derived from mifepristone's current indication for termination of pregnancy. For instance, the Petition cited research "suggest[ing] that the [REMS] pharmacy [certification] requirement is unnecessary to ensure that mifepristone's benefits outweigh its risks

---

[8] U.S. Dep't of Health & Hum. Servs*., Remarks by Secretary Xavier Becerra at the Press Conference in Response to President Biden's Directive following Overturning of Roe v. Wade* (June 28, 2022), available at: https://www.hhs.gov/about/news/2022/06/28/remarks-by-secretary-xavier-becerra-at-the-press-conference-in-response-to-president-bidens-directive-following-overturning-of-roe-v-wade.html [hereinafter "Becerra Remarks"].

[9] While miscarriage care is not yet formally listed as an "indication" on the mifepristone labeling, it is common and permissible across all areas of medicine for health care providers to prescribe medications for "off-label" uses consistent with medical evidence, as reflected in Secretary Becerra's statement. *See also, e.g.*, ECF 90-22, at FDA0543, 0552–55, 0565, 0568, 0594 (2016 review by FDA favorably describing off-label use of mifepristone since 2001 by "many clinics and individual practitioners," consistent with ACOG and National Abortion Federation guidelines).

[10] ACOG Pet., Ex. A, at 1.

and unduly burden access," and explained that "[t]he extra administrative burden will disincentivize participation" by pharmacies, who "will engage in a business decision where they will evaluate whether the financial gain in distributing the drug is worth the costs and risks."[11] It noted, "[m]oreover, [that] given that the antiabortion movement is known for boycotts, pharmacies will also likely weigh the risks associated with their status as a certified pharmacy becoming public."[12]

The ACOG Petition explained that clinicians might "be particularly wary about undergoing the certification process for mifepristone" since "[e]ven before *Roe v. Wade* was overturned, abortion providers have consistently faced risks of violence and harassment unlike any other field of medicine."[13] With respect to the Patient Agreement form, the Petition requested that it be "removed entirely because it is medically unnecessary and repetitive of informed consent, as a previous review conducted by [FDA] determined in 2016."[14] Citing research on abortion stigma, the Petition also noted that "mak[ing] people attest that they are ending a pregnancy [on the Patient Agreement form], which is not accurate for the indication of miscarriage, . . . will confuse patients at best, . . . [and] might also add emotional

---

[11] *Id.* at 15.

[12] *Id.* at 16.

[13] *Id.* at 13–14.

[14] *Id.* at 12.

harm to their miscarriage experience."[15]

Significantly, the ACOG Petition also argued that "Existing Data Demonstrate that a Removal of All REMS Requirements Will Not Harm Patient Safety."[16] Citing to a full study published by Schummers et al. in the New England Journal of Medicine on January 6, 2022,[17] the Petition explained:

> After Canada removed all restrictions on prescribing mifepristone for abortion, thereby allowing it to be prescribed and dispensed like any other drug ("normal prescribing"), there was no increase in complications from mifepristone use. In a 2022 study, Schummers and colleagues used multiple sources of medical and administrative data to create a linked dataset containing information on Ontario residents receiving abortion care through Canada's universal, single-payer health system from 2012 through 2020 (total n=314,859 abortions). They found *no difference in the rate of any complication* (0.67% vs. 0.69%) *or in the rate of serious adverse events* (0.03% vs. 0.04%) between the ten-month period when mifepristone was distributed with REMS-like restrictions and the twenty-eight-month period of normal prescribing after all such restrictions were lifted and mifepristone was prescribed with no special self-certification and dispensed routinely from pharmacies.[18]

On January 3, 2023—nearly two-and-a-half months after the ACOG Petition

---

[15] *Id.* at 12.

[16] *Id.* at 17.

[17] Laura Schummers et al., *Abortion Safety and Use with Normally Prescribed Mifepristone in Canada*, 386 N. Eng. J. Med. 57 (Jan. 2022), attached hereto as Ex. B, at Pet. Ref. 1043.

[18] ACOG Pet., Ex. A, at 17 (emphasis added) (citations omitted).

was submitted, and a full year after the Schummers study on "Normally Prescribed Mifepristone in Canada" was published—FDA "complet[ed]" its final REMS review and issued the 2023 mifepristone REMS. (ECF 169-1, at 1.) On the same day, FDA denied the ACOG Petition. The agency stated that it "carefully considered the Petition" before reaching that decision.[19]

In the Denial Letter, FDA explained that there are two avenues for adding a new indication to a drug's labeling: either "the holder of an approved application [must] submit a supplement to [that] application," or a "person would need to submit a separate, original application for approval of a new drug with the new indication."[20] FDA noted its "understanding" that the holder of an approved application for mifepristone "is aware of [the] Petition, including the request to add miscarriage management as an indication to the drug's labeling."[21] "For th[o]se reasons," FDA declined to ask the mifepristone drug application holder to submit a supplemental application seeking to add miscarriage management as an indication to the labeling.[22] FDA denied as "premature" the request to "eliminate or modify the Mifepristone REMS Program so that it is not unduly burdensome for a miscarriage

---

[19] Denial Letter, Ex. C, at 1.

[20] *Id.* at 3.

[21] *Id.*

[22] *Id.* at 4.

management indication," and stated that the request to exercise enforcement discretion with respect to the mifepristone REMS was "not properly . . . the subject of a citizen petition under FDA's regulations," while declining to offer any substantive reason for not doing so on its own volition.[23]

## III.   STANDARD OF REVIEW

Under 5 U.S.C. § 706, "judicial review of agency action shall be based on 'the whole record,'" which "includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y*, 984 F.2d at 1548 (citing *Thompson,* 885 F.2d at 555–56); *accord Goffney v. Becerra*, 995 F.3d 737, 747 (9th Cir.), *cert. denied*, 142 S. Ct. 589 (2021); *Pac. Choice Seafood Co. v. Ross*, 976 F.3d 932, 942 (9th Cir. 2020). Thus, when the material that plaintiffs "seek to have included in the record is material that . . . was before the agency," it must be added to the record. *Portland Audubon Soc'y*, 984 F.2d at 1548 (emphasis omitted). This includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (emphasis in original) (citation omitted).

Moreover, "expansion of the administrative record" is also permissible when, *inter alia*, "necessary to determine if the agency has considered all factors and

---

[23] *Id.*

10

explained its decision." *Fence Creek Cattle Co.*, 602 F.3d at 1131; *accord Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). Because "[a]n agency's action may be arbitrary and capricious if it can be shown that 'the agency . . . entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency,' . . . documents that were *not* relied upon by a decisionmaker, or evidence relating to such documents and their non-consideration, have been held to be necessary elements of an administrative record." *Trout Unlimited v. Lohn*, No. C05-1128C, 2006 WL 1207901, at *3 (W.D. Wash. May 4, 2006) (emphasis in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 43 (1983)). In other words, supplementation is proper for extra-record documents that "were not considered" but "*should have been* considered." *High Sierra Hikers Ass'n v. U.S. Dep't of the Interior*, No. C-09-4621 JCS, 2011 WL 2531138, at *8 (N.D. Cal. June 24, 2011) (emphasis in original) (citing *Trout Unlimited,* 2006 WL 1207901, at *3).

## IV.   ARGUMENT

### A. The Record Is Incomplete Without the Petition, Which Was Before the Agency and, at Minimum, Indirectly Considered.

The Petition and its references were indisputably "before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y*, 984 F.2d at 1548 (citation omitted). FDA received the Petition on October 4, 2022, months before "complet[ing]" its January 3, 2023 REMS review and issuing the updated

mifepristone REMS. (ECF 169-1, at 1.) And the Petition was relevant to the challenged agency action on its face: it argued that a REMS is unnecessary for mifepristone, whether used for abortion or miscarriage care, and that the ETASU for mifepristone are unduly burdensome on patient access, whether used for abortion or miscarriage care.[24] *See Thompson*, 885 F.2d at 555 ("[A]ll relevant correspondence concerning the settlement negotiations should have been included as part of the record"). The fact that FDA coordinated its response to the ACOG Petition and the very agency action challenged here—with both actions taken on January 3, 2023— only underscores the Petition's relevance to this litigation.

Most significantly, FDA *conceded* that it "carefully considered the Petition."[25] That is dispositive under Ninth Circuit precedent. *Thompson*, 885 F.2d at 555 (citation omitted); *Goffney*, 995 F.3d at 747 (quoting *Thompson*).[26] FDA's reason for denying the Petition and ignoring the evidence contained therein has no bearing on this Motion: because the material was before the agency and, at minimum, indirectly considered by FDA, it must be included in the record. Indeed, the record

---

[24] *See* ACOG Pet., Ex. A, at 11–17.

[25] Denial Letter, Ex. C, at 1.

[26] Notably, in addition to FDA's general obligations with respect to reviewing citizen petitions, 21 C.F.R. § 10.30(d), FDA was required to review the ACOG Petition under the terms of the *Chelius* parties' May 2021 agreement: the parties jointly moved for a stay of this action in spring 2021 on the condition that FDA would "review any relevant data and evidence submitted by the Plaintiffs," Joint Mot. Stay 2 (ECF 148), and Plaintiff Society of Family Planning was a signatory to the Petition.

already contains numerous studies that FDA expressly excluded from its REMS review.[27] *Cf. Goffney*, 995 F.3d at 747 (holding that, under a regulation that "codified th[e] requirement" that all relevant information that was before an agency must be included in the record, "proffered evidence" must be included even if "excluded by the adjudicator").

Without the Petition, its references, and the Denial Letter, the record is "incomplete," and thus a "'fictional account of the actual decisionmaking process.'" *Portland Audubon Soc'y*, 984 F.2d at 1548 (quoting *Home Box Office, Inc. v. Federal Commc'ns. Comm'n,* 567 F.2d 9, 54 (D.C. Cir. 1977).[28] Under the relevant legal standard, these materials must be added to the record.

### B. The ACOG Petition and Its References Are Necessary for This Court to Evaluate Whether FDA's Actions Were Arbitrary and Capricious.

Even if the Petition and its references had not been actually considered by FDA, supplementing the record still would be appropriate for an independent reason: to ensure that this Court can adequately assess Plaintiffs' APA claims. Plaintiffs intend to argue, *inter alia*, that the agency ignored a "statutory limit on its authority," *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209, 1216-17 (D.C.

---

[27] *Compare* ECF 169-2, at 45–49 (FDA's December 16, 2021 REMS Review identifying evidence submitted to the agency that was excluded from its review), *with* AR Certification, Ex. E, at 27–31 (reflecting same materials).

[28] Denial Letter, Ex. C, at 1.

Cir. 2004) (cleaned up), "failed to consider an important aspect of the problem, [and] offered an explanation for its decision that runs counter to the evidence before the agency," *State Farm*, 463 U.S. at 43. "[D]ocuments which may demonstrate that the Government ignored relevant factors" "are appropriately part of the administrative record." *High Sierra Hikers Ass'n*, 2011 WL 2531138, at *9; *Lands Council*, 395 F.3d at 1030 ("extra-record evidence" admitted on APA claims when "necessary to determine whether the agency has considered all relevant factors and has explained its decision" (citation and internal quotation marks omitted)).  Just so here.

Plaintiffs will argue that FDA acted arbitrarily and capriciously when, *inter alia*, it determined that a REMS remains necessary to ensure that the benefits of mifepristone outweigh its risks, 21 U.S.C. § 355-1(a), without addressing the Canadian study showing that mifepristone use remained just as safe after that country ended its REMS-like restrictions—which had included a "registration program for prescribers" and "a patient consent form."[29] FDA's December 16, 2021 REMS review acknowledged that this data set existed, yet justified ignoring it because only an abstract was available at the time. (ECF 169-2, at 12, 46–49.) But *just three weeks later*, on January 6, 2022, Schummers et al. published a full study in the New England Journal of Medicine comprehensively detailing the authors'

---

[29] Health Canada, *Regulatory decision summary: Mifegymiso* 2 (July 29, 2015), available at https://cart-grac.ubc.ca/files/2017/07/Regulatory-Decision-Summary-SBD_-MIFEGYMISO-2015-Health-Canada.pdf.

14

methodology and results.[30] FDA nowhere sought and reviewed that highly relevant safety data, even though *a full year* passed between the study's publication and when the agency finalized its January 2023 REMS review and issued the 2023 mifepristone REMS—and even though the ACOG Petition submitted in October 2022 extensively discussed the results of that Canadian study.[31]

FDA likewise ignored evidence in the Petition that the mifepristone ETASU are "unduly burdensome on patient access." 21 U.S.C. § 355-1(f)(2)(C); *see supra* 6–8. For instance, the ACOG Petition warned that a pharmacy certification requirement will "disincentivize participation" by pharmacies,"[32] and that the Patient Agreement form is causing "emotional harm" to patients who already use mifepristone off-label for miscarriage treatment,[33] the "gold standard for care when someone who's pregnant experiences a miscarriage," in the words of HHS Secretary Becerra.[34] Because FDA's decision to ignore relevant evidence in the Petition will be integral to the Court's APA analysis, supplementation of the record is warranted.

## V.   CONCLUSION

The Administrative Record is incomplete without the ACOG Petition, its

---

[30] *See generally* Schummers, *supra* n.17, Ex. B, at Pet. Ref. 1043.

[31] ACOG Pet., Ex. A, at 16 (citing Schummers, *supra* n.17, Ex. B, at Pet. Ref. 1043.
[32] *Id.*

[33] *Id.* at 13.

[34] Becerra Remarks, *supra* n.8.

references, and the Denial Letter. But even if that were not the case, supplementing the record with these materials would be appropriate because they shine light on key factors that FDA ignored. For both of those independent reasons, Plaintiffs respectfully request that this Court order FDA to add the Petition, its references, and the Denial Letter to the administrative record.

Respectfully submitted,

/s/ Jongwook "Wookie" Kim
JONGWOOK "WOOKIE" KIM
11020
**ACLU of Hawaii Foundation**
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
wkim@acluhawaii.org

LORIE CHAITEN*
**American Civil Liberties Union
Foundation**
1640 North Sedgwick Street
Chicago, IL 60614
T: (212) 549-2633
F: (212) 549-2650
lchaiten@aclu.org

RACHEL REEVES*
**American Civil Liberties Union
Foundation**
915 15th Street NW
Washington, DC 20005
T: (212) 549-2633
F: (212) 549-2650
rreeves@aclu.org

JULIA KAYE*
JENNIFER DALVEN*
WHITNEY WHITE*
**American Civil Liberties Union
Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2633
F: (212) 549-2650
jkaye@aclu.org
jdalven@aclu.org
wwhite@aclu.org

JOHN A. FREEDMAN*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
john.freedman@arnoldporter.com

*admitted pro hac vice*

*Attorneys for Plaintiffs*

DATED: Honolulu, Hawai'i, November 30, 2023.