BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

JAMES W. HARLOW
Acting Assistant Director

NOAH T. KATZEN (D.C. Bar No. 1006053)
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth St., N.W.
Washington, DC 20530
Tele: 202-305-2428 (Katzen)/202-305-7134 (Belfer)
Fax: 202-514-8742
Noah.T.Katzen@usdoj.gov
Isaac.C.Belfer@usdoj.gov

*Attorneys for Defendants Xavier Becerra*, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GRAHAM T. CHELIUS, M.D., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, *et al.*, <br><br> Defendants. | CIV. NO. 1:17-00493-JAO-RT <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE OR, IN THE ALTERNATIVE, SUPPLEMENT THE RECORD** |

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND.................................................................................................3

    I.    Statutory and regulatory background.......................................................3

    II.   Factual background................................................................................5

       A.  The Mifepristone REMS Program ......................................................5

       B.  ACOG's Citizen Petition...................................................................11

ARGUMENT.................................................................................................12

    I.    The Court should deny Plaintiffs' motion to complete the record ............12

    II.   The Court should deny Plaintiffs' motion to supplement the record with extra-record evidence.....................................................................19

CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Alegre v. United States*,
   No. 16-CV-2442-AJB-KSC, 2021 WL 4934982
   (S.D. Cal. July 29, 2021) ........................................................................ 13, 15, 17

*Am. Coll. of Obstetricians & Gynecologists v. FDA*,
   472 F. Supp. 3d 183 (D. Md. 2020) ........................................................................9

*Blue Mountains Biodiversity Project v. Jeffries*,
   72 F.4th 991 (9th Cir. 2023)................................................. 12, 13, 14, 15, 17, 21

*Conservation Cong. v. U.S. Forest Serv.*,
   No. 2:13-CV-01922-TLN-CMK, 2016 WL 10637090
   (E.D. Cal. Oct. 12, 2016)............................................................. 13, 14, 15, 16, 17

*Cook Inletkeeper v. EPA*,
   400 F. App'x 239 (9th Cir. 2010)........................................................................20

*CoreCivic, Inc. v. Candide Grp., LLC*,
   46 F.4th 1136 (9th Cir. 2022).............................................................................14

*Ctr. for Biological Diversity v. Jewell*,
   CV-12-02296-PHX-DGC, 2014 WL 116408
   (D. Ariz. Jan. 13, 2014) ........................................................................ 21, 22, 24

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
   No. CV 10-476 (RMC), 2016 WL 10749142 (D.D.C. Apr. 25, 2016)................16

*FDA v. Am. Coll. of Obstetricians & Gynecologists*,
   141 S. Ct. 578 (2021) ........................................................................ 9, 10, 11, 12

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
   602 F.3d 1125 (9th Cir. 2010)........................................................................ 19, 20

*Goffney v. Becerra*,
   995 F.3d 737 (9th Cir. 2021) ........................................................................ 14, 15

*High Sierra Hikers Association v. U.S. Dep't of the Interior*,
   No. C-09-4621 JCS, 2011 WL 2531138 (N.D. Cal. June 24, 2011)....................25

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005)................................................................. 20, 21, 25

*Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*,
    No. 3:18-CV-01420-AC, 2019 WL 6977406 (D. Or. Dec. 20, 2019) .......... 20, 21

*Organic Pastures Dairy Co. v. Sebelius*,
    No. 1:12-CV-02019-SAB, 2013 WL 4648548
    (E.D. Cal. Aug. 29, 2013)....................................................................... 21, 22, 24

*Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................. 13, 18

*Portland Audubon Society v. Endangered Species Committee*,
    984 F.2d 1534 (9th Cir. 1993)...............................................................................14

*Safari Club Int'l v. Jewell*,
    No. CV-16-00094-TUC-JGZ, 2016 WL 7785452
    (D. Ariz. July 7, 2016).................................................................. 12, 13, 16, 17, 25

*Thompson v. U.S. Dep't of Lab.*,
    885 F.2d 551 (9th Cir. 1989)........................................................... 12, 14, 17, 18

*Trout Unlimited v. Lohn*,
    No. C05-1128C, 2006 WL 1207901 (W.D. Wash. May 4, 2006) .......................25

*Washington v. FDA*,
    No. 1:23-CV-3026-TOR, 2023 WL 2825861 (E.D. Wash. Apr. 7, 2023)...........22

*Whole Woman's Health All. v. FDA*,
    No. 3:23-CV-00019, 2023 WL 5401885 (W.D. Va. Aug. 21, 2023) .................22

*WildEarth Guardians v. U.S. Fish & Wildlife Serv.*,
    No. CV-13-00151-TUC-RCC, 2015 WL 13567455
    (D. Ariz. Sept. 28, 2015) ......................................................................................20

*Xerces Soc'y for Invertebrate Conservation v. Shea*,
    No. 3:22-CV-00790-HZ, 2023 WL 4941221 (D. Or. July 17, 2023) .................16

**Statutes**

5 U.S.C. §
    702 ......................................................................................................................12
    706 ..................................................................................................... 12, 13, 16

21 U.S.C. §
    331 ........................................................................................................................4
    355(a)....................................................................................................................3
    355(d)....................................................................................................................3
    355-1 .....................................................................................................................4
    355-1(f)(1) ............................................................................................................4

355-1(f)(2) ................................................................................................4
355-1(f)(3) ................................................................................................4
355-1(g)(4) ...............................................................................................4
355-1(g)(4)(B) ..........................................................................................4

Pub. L. No. 110-85 §

901 ...........................................................................................................3
909 ...........................................................................................................4
909(b)(1) ..................................................................................................5

## Regulations

21 C.F.R. §

314.50 ......................................................................................................3
314.70 ......................................................................................................3
314.105(c) ................................................................................................3
314.520 ....................................................................................................3

42 C.F.R. §
405.1042(a)(2) .......................................................................................14

## Other Authorities

Final Rule, 57 Fed. Reg. 58,942 (Dec. 11, 1992) ....................................3

## INTRODUCTION

Plaintiffs challenge the Food and Drug Administration's January 2023 approval of supplemental new drug applications that modified the restrictions in the Mifepristone Risk Evaluation and Mitigation Strategy (REMS) Program for the approved use of mifepristone: medical termination of intrauterine pregnancy through 70 days gestation. On September 29, 2023, Defendants certified the index of the administrative record for the challenged decision and completed production of the record, which spans over 6,000 pages. Ex. E.[1] Plaintiffs now seek to complete or, in the alternative, supplement that record with additional documents: a Citizen Petition submitted to FDA in October 2022 by the American College of Obstetricians and Gynecologists (ACOG) and 48 other organizations, the documents that the petition lists as references, and FDA's denial of that petition in January 2023 (collectively, the "ACOG Citizen Petition documents").[2] But these

---

[1] Citations to lettered exhibits refer to the exhibits to Plaintiffs' Motion to Complete or, in the Alternative, Supplement the Record, ECF No. 198. Citations to numbered exhibits refer to the exhibits to the Declaration of Isaac C. Belfer, attached to this brief.

[2] As it happens, seven of the documents that the petition lists as references are already in the record, because they were retrieved in response to FDA's literature search for the REMS review or because a submission that fell within the scope of FDA's REMS review listed them as a reference: Reference 3 (Ex. 1), Reference 5 (Ex. 2), Reference 23 (Ex. 3), Reference 37 (Ex. 4), Reference 44 (Ex. 5), Reference 47 (Ex. 6), and Reference 49 (Ex. 7). Any dispute over those documents is moot.

documents are not properly part of the record because FDA's denial of the ACOG petition is not challenged here, and the petition was not directly or indirectly considered by FDA when reaching the separate decision to approve the modification to the Mifepristone REMS Program. While ACOG's petition addressed an unapproved use of mifepristone for miscarriage management, FDA's REMS review concerned a different issue: the REMS for the *approved* indication of mifepristone for medical termination of early pregnancy. Plaintiffs have not come close to meeting their burden to present clear evidence that the record compiled by the agency omits documents that the decisionmaker actually considered.

Nor have Plaintiffs cleared the high bar to supplement the record with their extra-record evidence. Plaintiffs argue this extra-record evidence is necessary to determine whether the agency considered all relevant factors. But courts construe this exception to the record-review rule narrowly, applying it only when the agency failed to consider a general subject that was relevant to the decision. Here, while the ACOG petition discussed whether the then-existing REMS requirements were unduly burdensome for the unapproved use of mifepristone for miscarriage management, miscarriage management was not relevant to FDA's review of the burdens of the REMS on patient access for mifepristone's approved use. Moreover, FDA thoroughly considered whether the REMS requirements were unduly

2

burdensome with respect to that approved use. Thus, supplementation of the record is not warranted.

BACKGROUND

## I.  Statutory and regulatory background

The Federal Food, Drug, and Cosmetic Act (FDCA) generally prohibits the interstate distribution of new drugs that have not received FDA approval. 21 U.S.C. § 355(a). FDA approves a new drug application if the drug is shown to be safe and effective for its intended use(s). *Id.* § 355(d); *see also* 21 C.F.R. §§ 314.50, 314.105(c). Similarly, when a drug's sponsor proposes changes to the drug's conditions of approval (such as changes to labeling or to restrictions relating to its distribution or use), FDA reviews the scientific evidence submitted in support of the proposal to determine if it should be approved. *See* 21 C.F.R. § 314.70.

In 1992, FDA promulgated regulations (the Subpart H regulations) providing for the imposition of conditions "needed to assure safe use" of certain new drugs that satisfy the other requirements for approval under the FDCA. Final Rule, 57 Fed. Reg. 58,942, 58,958 (Dec. 11, 1992) (codified at 21 C.F.R. § 314.520). In the Food and Drug Administration Amendments Act of 2007, Congress codified and expanded the Subpart H regulations by giving FDA authority to require a REMS when it determines that restrictions are necessary to ensure that the benefits of a drug outweigh the risks. *See* Pub. L. No. 110-85, tit. IX, § 901 (codified at, *inter*

3

*alia*, 21 U.S.C. § 355-1). FDA may require that a REMS include "elements to assure safe use," such as a requirement that a drug's prescribers have particular training or that a drug be dispensed only in certain settings. *See* 21 U.S.C. § 355-1(f)(1)–(3).

The 2007 statute expressly incorporated drugs with existing Subpart H restrictions into the new REMS framework. *See* Pub. L. No. 110-85, tit. IX, § 909 (21 U.S.C. § 331 note). Specifically, Congress "deemed" such drugs to have a REMS in effect, with the Subpart H restrictions serving as "elements to assure safe use." *Id.* § 909(b). Thereafter, sponsors for such drugs were required to submit supplemental drug applications with a proposed REMS, which FDA then reviewed. *See id.*

The 2007 statute also provided standards for modifying an existing REMS. *See* 21 U.S.C. § 355-1(g)(4). As relevant here, FDA may require an applicant to "submit a proposed modification" to the REMS if the agency "determines that 1 or more goals or elements should be added, modified, or removed" from the approved REMS to "ensure the benefits of the drug outweigh the risks of the drug" or "minimize the burden on the health care delivery system of complying with the strategy." *Id.* § 355-1(g)(4)(B).

## II. Factual background

### A. The Mifepristone REMS Program

In 2000, FDA approved mifepristone (under the brand name Mifeprex) in a regimen with misoprostol for medical termination of intrauterine pregnancy through 49 days gestation. At the same time, to assure mifepristone's safe use, FDA placed Subpart H restrictions on the distribution and use of the drug product, including that (1) patients sign a Patient Agreement Form; (2) prescribers certify that (among other things) they have the ability to accurately date pregnancies and diagnose ectopic pregnancies, and will either perform surgical intervention or arrange for others to perform it if necessary; and (3) the drug be dispensed in person in certain healthcare settings, by or under the supervision of a specially certified prescriber. Ex. 8. FDA concluded based on a review of clinical trials and other scientific evidence that, under those conditions, mifepristone was safe and effective to terminate early pregnancy.

Because these Subpart H restrictions were in place when the 2007 statute took effect, Mifeprex was "deemed to have in effect an approved [REMS]" that continued these restrictions as "elements to assure safe use." Pub. L. No. 110-85, § 909(b)(1); *see also* Ex. 9. In 2011, in response to a submission by the sponsor, FDA approved the Mifeprex REMS after determining that it remained necessary to ensure the benefits of mifepristone outweigh the risks. Supplement Approval for

NDA 020687/S-014 (June 8, 2011), https://perma.cc/JJJ9-NYKQ. When FDA

approved a generic version of the drug in 2019, it approved a single, shared system

REMS, known as the Mifepristone REMS Program, for both Mifeprex and the

generic version. Ex. 10.

FDA has since reviewed and approved modifications to the Mifepristone

REMS Program that are consistent with decades of experience reflecting that the

benefit-risk profile for the approved use of mifepristone remains favorable.[3] As

relevant here, on May 7, 2021, FDA announced that it would review the elements

of the Mifepristone REMS Program to determine whether those elements should be

modified. Ex. 12 at 2023 SUPP 001368. FDA's review encompassed "multiple

different sources of information," including "published literature," "safety

information," adverse event reports, a "REMS assessment report" submitted by the

applicants, and "information provided by advocacy groups, individuals, and the

[sponsors]." *Id.* at 2023 SUPP 001370. The agency's literature review covered

material published between March 29, 2016 (the date of an earlier REMS

modification) and July 26, 2021, and included publications found on PubMed and

Embase as well as those provided by "advocacy groups, individuals, plaintiffs in

[*Chelius v. Becerra*, Civ. No. 1:17-00493-JAO-RT (D. Haw.)]," the sponsors, and

---

[3] *See, e.g.*, Ex. 11 at FDA 0374 (modifying REMS and extending approved use
through 70 days gestation); https://perma.cc/7BQC-AJP9 (see Approval Date(s)
and History, Letters, Labels, Reviews for NDA 020687).

"healthcare providers and researchers." *Id.* at 2023 SUPP 001370–71.

On December 16, 2021, FDA announced its conclusion that "the Mifepristone REMS Program continues to be necessary to ensure the benefits [of mifepristone] outweigh the risk[s]" and that "certain elements of the Mifepristone REMS Program remain necessary to assure the safe use of mifepristone." Ex. 13 at 2019 CP 000634. Specifically, FDA found that the prescriber certification and Patient Agreement Form requirements continued to be necessary. *Id.* at 2019 CP 000650. At the same time, FDA determined that the REMS "must be modified to remove the requirement that mifepristone be dispensed only in certain healthcare settings . . . because this requirement is no longer necessary to ensure that the benefits of the drug outweigh the risks." *Id.* at 2019 CP 000653. FDA also determined that because the in-person dispensing requirement was being removed, it was necessary to add a new requirement that pharmacies that dispense the drug be certified. *Id.* at 2019 CP 000663. "[M]ifepristone will remain safe and effective" with these REMS modifications, FDA concluded, "provided all the other requirements of the REMS are met." *Id.*

FDA detailed its reasoning in a 49-page scientific review memorandum. Ex. 12. *First*, FDA explained that it was retaining the prescriber certification requirement, under which mifepristone can be prescribed only by providers who are certified under the REMS and attest, among other things, that they can

7

accurately date pregnancies, diagnose ectopic pregnancies, and perform or arrange for surgical intervention for patients who experience complications. *Id.* at 2023 SUPP 001372–74. The agency concluded that prescriber certification "continues to be a necessary component of the REMS to ensure the benefits of mifepristone for medical abortion outweigh the risks," but noted that "[t]he burden of prescriber certification has been minimized to the extent possible" because each provider need only provide one certification to each of the two drug sponsors for mifepristone. *Id.* at 2023 SUPP 001374.

*Second*, FDA concluded that "literature that focused on the informed consent process" "d[id] not provide evidence that would support removing" the Patient Agreement Form requirement. *Id.* at 2023 SUPP 001376–77. Among other things, the agency found that the single-page Patient Agreement Form "is an important part of standardizing the medication information on the use of mifepristone that prescribers communicate to their patients," "does not impose an unreasonable burden on providers or patients," and "remains necessary to assure the safe use of Mifepristone." *Id.* at 2023 SUPP 001378.

*Third*, based on an extensive review of the REMS assessment reports submitted by the drug's sponsors, postmarketing safety data (including adverse event data), and the published literature, *id.* at 2023 SUPP 001378–1400, FDA found the in-person dispensing requirement was no longer necessary to assure the

8

safe use of the drug. For much of the COVID-19 public health emergency, FDA had not enforced the in-person dispensing requirement.[4] Based on the agency's review of data from the public health emergency and other information, FDA found that "there does not appear to be a difference in adverse events between periods during the COVID-19 [public health emergency] when the in-person dispensing requirement was being enforced and periods when the in-person dispensing requirement was not being enforced." *Id.* at 2023 SUPP 001398. Moreover, postmarketing data did not show any new safety concerns with use of the drug. *Id.* The published literature also supported the agency's determination. *Id.* at 2023 SUPP 001384–96. The agency therefore concluded that "mifepristone will remain safe and effective for medical abortion if the in-person dispensing requirement is removed, provided all the other requirements of the REMS are met, and pharmacy certification is added." *Id.* at 2023 SUPP 001399.

The pharmacy certification requirement permits pharmacies to dispense mifepristone upon prescriptions by certified prescribers if the pharmacies become

---

[4] In July 2020, a district court preliminarily enjoined enforcement of that requirement in light of the public health emergency. *Am. Coll. of Obstetricians & Gynecologists v. FDA*, 472 F. Supp. 3d 183, 233 (D. Md. 2020). Although the Supreme Court eventually stayed that preliminary injunction in January 2021, *see FDA v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 578 (2021) (mem.), FDA announced in April 2021 that it would exercise enforcement discretion with respect to the in-person dispensing requirement during the public health emergency. *See* Ex. 1.

certified by agreeing to follow applicable REMS requirements. FDA expressly tied the addition of the pharmacy certification requirement to the removal of the in-person dispensing requirement. *See id.* at 2023 SUPP 001400 ("Given this modification to the dispensing requirements in the REMS, it is necessary to add a requirement for certification of pharmacies . . . ."). Adding this requirement would "incorporate[] pharmacies into the REMS, ensur[ing] that [they] are aware of and agree to follow applicable REMS requirements, and . . . that mifepristone is only dispensed pursuant to prescriptions that are written by certified prescribers." *Id.* "Without pharmacy certification," FDA explained, "a pharmacy might dispense product that was not prescribed by a certified prescriber." *Id.* Consequently, to "ensure the benefits of mifepristone for medical abortion outweigh the risks while minimizing the burden imposed by the REMS on healthcare providers and patients," FDA determined that the Mifepristone REMS Program must be modified to "remov[e] the in-person dispensing requirement" and add the "requirement for pharmacy certification." *Id.* at 2023 SUPP 001401.

FDA directed the drugs' sponsors to submit supplemental applications proposing these modifications to the REMS. Ex. 14; Ex. 15. The sponsors submitted their supplemental applications in 2022, and FDA approved them on January 3, 2023. Ex. 16 at 2023 SUPP 001120–26; Ex. 17; Ex. 19.

10

### B. ACOG's Citizen Petition

On October 4, 2022, ACOG submitted a Citizen Petition to FDA on behalf of itself and 48 other organizations. Ex. A at 1. The petition requested that FDA ask Danco Laboratories, LLC (Danco)—the sponsor of Mifeprex (mifepristone)—to submit a Supplemental New Drug Application (sNDA) "to add miscarriage management as an indication to the mifepristone label and to modify the REMS so that it does not unduly burden its use for miscarriage management." *Id.* at 2. The petition also requested that, while FDA "is considering these changes," it "state that it will exercise enforcement discretion with respect to the use and distribution of mifepristone consistent with the requested indication and REMS modifications." *Id.*

On January 3, 2023, FDA denied ACOG's Citizen Petition. Ex. C at 1. First, FDA denied ACOG's "request that [FDA] ask the [Mifeprex sponsor] to submit an sNDA that seeks to add miscarriage management as an indication to the drug's labeling." *Id.* at 3. FDA explained that "[o]nly the holder of an approved application may submit a supplement to an application." *Id.* FDA next denied ACOG's request that FDA "eliminate or modify the Mifepristone REMS Program so that it is not unduly burdensome for a miscarriage management indication." *Id.* at 4. The agency explained that "[b]ecause the management of miscarriage is not a currently approved indication for mifepristone, it would be premature for FDA to

consider the impact that the addition of this indication would have, if any, on the Mifepristone REMS Program so that it is not unduly burdensome for that use." *Id.* Finally, FDA denied ACOG's request that "FDA immediately exercise enforcement discretion with respect to the use and distribution of mifepristone for miscarriage management without complying with the Mifepristone REMS Program." *Id.* Under its regulations, FDA explained, "[a]gency decisions to take, or to refrain from taking, enforcement action . . . are not properly the subject of a citizen petition." *Id.*

ARGUMENT

## I.  The Court should deny Plaintiffs' motion to complete the record

Judicial review of an "agency action" under the Administrative Procedure Act (APA) is based on "the whole record," 5 U.S.C. §§ 702, 706, which consists of "all documents and materials directly or indirectly considered by agency decision-makers" in reaching the particular decision under review, *Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 996 (9th Cir. 2023) (quoting *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)) (internal quotation marks omitted). "Documents and materials indirectly considered by agency decision-makers are those that may not have literally passed before the eyes of the decision-makers, but were so heavily relied on in [subordinates'] recommendation[s]" or in other materials directly considered by the decisionmaker "that the decision maker constructively considered them." *Safari Club Int'l v.*

*Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7785452, at *2 (D. Ariz. July 7, 2016) (quotations omitted).

The "whole record," 5 U.S.C. § 706, "is ordinarily the record the agency presents," *Blue Mountains Biodiversity Project*, 72 F.4th at 996 (quotations omitted). After all, the agency "did the considering" and "therefore is in a position to indicate initially which of the materials were before it—namely, were directly or indirectly considered." *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotations omitted).

"[L]ike other official agency actions, an agency's statement of what is in the record is subject to a presumption of regularity." *Blue Mountains Biodiversity Project*, 72 F.4th at 997 (quotations omitted). Specifically, the Ninth Circuit has instructed courts to "presume that an agency properly designated the Administrative Record" absent "clear evidence to the contrary." *Id.* (quotations omitted). Thus, to rebut the presumption of regularity, a party must show by clear evidence that the proffered documents were considered by the agency in reaching the challenged decision. *See Alegre v. United States*, No. 16-CV-2442-AJB-KSC, 2021 WL 4934982, at *4 (S.D. Cal. July 29, 2021); *Conservation Cong. v. U.S. Forest Serv.*, No. 213CV01922TLNCMK, 2016 WL 10637090, at *2 (E.D. Cal. Oct. 12, 2016). This standard is met only in "rare cases," and mere "inference[s]" about what the agency considered are not enough. *Conservation Cong.*, 2016 WL

10637090, at *2, *4.

Plaintiffs cite the statement in *Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534 (9th Cir. 1993), that "'[t]he whole record' includes everything that was before the agency pertaining to the merits of its decision." *Id.* at 1548; *see* ECF No. 198, Mot., at 2, 10. That is simply another articulation of the "directly or indirectly considered" standard previously set out in *Thompson*, and indeed *Portland Audubon Society* cited *Thompson*. 984 F.2d at 1548 (citing *Thompson,* 885 F.2d at 555–56). Moreover, even if there were a substantive difference between the language in *Portland Audubon Society* and *Thompson*, *Thompson* would control. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022). The Ninth Circuit recently confirmed the continued vitality of *Thompson*'s "directly or indirectly considered" standard. *See Blue Mountains Biodiversity Project*, 72 F.4th at 996 (citing *Thompson*, 885 F.2d at 555).

Similarly, the Ninth Circuit did not change the "directly or indirectly considered" standard in *Goffney v. Becerra*, 995 F.3d 737 (9th Cir. 2021)—nor could it have, *see CoreCivic*, 46 F.4th at 1141. *Goffney* observed that this standard was "codified" in a regulation specifying that the record of an adjudication by an Administrative Law Judge included, among other things, "proffered evidence excluded by the adjudicator." 995 F.3d at 747 (citing 42 C.F.R. § 405.1042(a)(2));

*see* Mot. 13. The court did not say that scope was identical to the scope of the record under Ninth Circuit precedent, and in the same paragraph it quoted *Thompson*'s "directly or indirectly considered" standard. *Goffney*, 995 F.3d at 747.[5]

Plaintiffs here have not met their burden to show by clear evidence that the record fails to include documents or materials that the agency "actually considered when making [the challenged] decision." *Conservation Cong.*, 2016 WL 10637090, at *2; *see Blue Mountains Biodiversity Project*, 72 F.4th at 996–97; *Alegre*, 2021 WL 4934982, at *4. FDA's denial of ACOG's Citizen Petition is not the decision challenged in this case. And Plaintiffs have not provided *any* evidence, let alone clear evidence, that in deciding to approve the January 2023 modification to the Mifepristone REMS Program, the agency decisionmaker "actually considered" the ACOG Citizen Petition documents, either directly or indirectly. *Conservation Cong.*, 2016 WL 10637090, at *2; *see Blue Mountains Biodiversity Project*, 72 F.4th at 996–97; *Alegre*, 2021 WL 4934982, at *4. Specifically, Plaintiffs have not shown that the decisionmaker directly considered those materials, nor have they shown that the materials "were so heavily relied on in

---

[5] Plaintiffs argue that "the record already contains numerous studies that FDA expressly excluded from its REMS review." Mot. 12–13. To be clear, FDA stated that it "excluded from the REMS review" certain "References Cited in Letters from [the *Chelius*] Plaintiffs," meaning that it considered those references but did not rely on them, for the reasons explained in its memorandum. Ex. 12 at 2023 SUPP 001405–09.

[subordinates'] recommendation[s]" or in other materials directly considered by the decisionmaker "that the decision maker constructively considered them." *Safari Club Int'l*, 2016 WL 7785452, at *2 (quotations omitted).

At most, Plaintiffs argue that "FDA received the Petition on October 4, 2022," prior to completing its REMS review on January 3, 2023, and that "the Petition was relevant to the challenged agency action." Mot. 11–12. As an initial matter, although the ACOG petition concerned mifepristone, its requests were not relevant to the REMS review because they pertained to an unapproved use of mifepristone for miscarriage management, whereas the REMS review concerned the approved use of mifepristone for termination of early pregnancy. Moreover, the mere "fact that the agency possessed the documents prior to the [challenged] decision does not mean that they were 'before the agency' for purposes of judicial review under . . . 5 U.S.C. § 706." *Detroit Int'l Bridge Co. v. Gov't of Canada*, No. CV 10-476 (RMC), 2016 WL 10749142, at *2 (D.D.C. Apr. 25, 2016); *see Conservation Cong.*, 2016 WL 10637090, at *2 (plaintiffs "cannot succeed simply by showing that the agencies were aware of [a document] or had [it] somewhere in their possession"). Plaintiffs cannot "simply assert[] that the documents were relevant, were before or in front of the agency and not included in the record." *Xerces Soc'y for Invertebrate Conservation v. Shea*, No. 3:22-CV-00790-HZ, 2023 WL 4941221, at *5 (D. Or. July 17, 2023) (alteration in original) (quotations omitted);

*see Alegre*, 2021 WL 4934982, at *4.

Courts should "be cautious against permitting the admission of any relevant document contained in the agency's filing cabinet," which would "fail[] to give appropriate deference to the agency's designation" of the documents it directly or indirectly considered. *Safari Club Int'l*, 2016 WL 7785452, at *2 (quotations omitted). This Court should not throw caution to the wind when Plaintiffs have failed to meet their burden to show by clear evidence that the record fails to include materials considered by the agency in reaching the challenged decision. *See Blue Mountains Biodiversity Project*, 72 F.4th at 996–97; *Alegre*, 2021 WL 4934982, at *4; *Conservation Cong.*, 2016 WL 10637090, at *2.

The Ninth Circuit's decision in *Thompson* does, as Plaintiffs suggest, help dispose of this motion, *see* Mot. 12—but in Defendants' favor. In *Thompson*, an employee filed complaints against his employer with the Department of Labor. 885 F.2d at 553. After the parties reached a settlement, the agency dismissed the employee's complaints with prejudice. *Id.* at 554. The employee moved for reconsideration, arguing that his complaints should not have been dismissed with prejudice and submitting settlement correspondence in support. *Id.* The agency denied the employee's reconsideration motion. *Id.* at 555. On appeal, the Ninth Circuit held the settlement correspondence was part of the record because it was "considered by the Secretary, either directly or indirectly," in denying the

17

employee's reconsideration motion. 885 F.2d at 555–56. Importantly, the settlement correspondence was submitted to the agency as part of the very reconsideration proceedings being challenged in court.

By contrast here, the review process that led to the approval of the January 2023 modification to the Mifepristone REMS Program was distinct from the review and denial of the ACOG Citizen Petition. The Citizen Petition concerned the unapproved use of mifepristone for miscarriage management. For example, it requested FDA to ask Danco to submit an sNDA "to add miscarriage management as an indication to the mifepristone label and to modify the REMS so that it does not unduly burden its use for miscarriage management." Ex. A at 2. It argued that mifepristone "is the most effective regimen for medical management of miscarriage" and that the REMS "is unnecessary to ensure mifepristone's benefits for miscarriage management outweigh its risks," *id.* at 7, 11–12. Although certain statements in the petition were phrased broadly and not expressly limited to the use of mifepristone for miscarriage management, *e.g.*, *id.* at 12; *see* Mot. 12, those statements were made in support of arguments that unambiguously concerned that unapproved use.

Miscarriage management, however, was outside the scope of FDA's review of the burdens related to mifepristone's approved use. *See* Ex. 12 at 2023 SUPP 001371 (FDA excluded "[s]afety data related to mifepristone use for spontaneous

first trimester abortion (i.e., miscarriages)" because "[t]hese publications reported data not applicable to the approved indication for medical abortion up to 70 days gestation."). As FDA explained in a consult for a March 29, 2019 Citizen Petition, "[t]he use of mifepristone for the management of early miscarriages is investigational and outside the scope of the Mifepristone REMS Program." Ex. 18 at 2019 CP 000621; *see* Ex. C at 4 (denying ACOG's Citizen Petition because, among other reasons, "the management of miscarriage is not a currently approved indication for mifepristone"). Thus, unlike the facts of *Thompson*, the evidence shows FDA did not consider the ACOG Citizen Petition when deciding to approve the January 2023 modification to the Mifepristone REMS Program.[6]

## II. The Court should deny Plaintiffs' motion to supplement the record with extra-record evidence

Just as Plaintiffs cannot show the record is incomplete, they cannot meet the threshold for supplementing the record with documents not considered by the decisionmaker. Plaintiffs first must meet a "heavy burden to show that the additional materials sought are necessary to adequately review the [agency]'s decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *see Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-

---

[6] That FDA responded to the ACOG Citizen Petition on the same day it approved the REMS modification, Mot. 12, does not mean FDA considered the petition in approving the REMS modification.

01420-AC, 2019 WL 6977406, at *8 (D. Or. Dec. 20, 2019). Plaintiffs next must show that their extra-record documents satisfy one of the "narrow exceptions to th[e] general rule" that "courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029–30 (9th Cir. 2005). Plaintiffs fail to make either required showing.

Plaintiffs have failed to meet their "heavy burden to show that the [ACOG Citizen Petition documents] are necessary to adequately review [FDA]'s decision." *Fence Creek Cattle*, 602 F.3d at 1131; *see Nw. Env't Advocs.*, 2019 WL 6977406, at *8. The over-6,000 page administrative record, including the detailed, 49-page REMS Modification Rationale Review, Ex. 12, "contains sufficient information to explain how the [agency used the information before it] and why it reached its decision," *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, No. CV-13-00151-TUC-RCC, 2015 WL 13567455, at *3 (D. Ariz. Sept. 28, 2015) (quoting *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240–41 (9th Cir. 2010)).

Plaintiffs also have not shown that any of the "narrow exceptions" to the record-review rule applies. *Lands Council*, 395 F.3d at 1029–30. Plaintiffs rely on only one such exception: when extra-record evidence "is necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Id.* at 1030. This exception is "narrowly construed and applied," *id.*, to prevent plaintiffs from "driv[ing] a truck through what is supposed to be a narrow

20

exception to the record review rule," *Nw. Env't Advocs.*, 2019 WL 6977406, at *9 (quotations omitted). It applies only when the agency "fail[ed] to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration." *Ctr. for Biological Diversity v. Jewell*, No. CV-12-02296-PHX-DGC, 2014 WL 116408, at *2 (D. Ariz. Jan. 13, 2014) (quotations omitted); *see Organic Pastures Dairy Co. v. Sebelius*, No. 1:12-CV-02019-SAB, 2013 WL 4648548, at *5 (E.D. Cal. Aug. 29, 2013). It cannot be used "merely to bolster the record or supply background information." *Ctr. for Biological Diversity*, 2014 WL 116408, at *1.

Courts "place a thumb on the scale against supplementation" of the record. *Blue Mountains Biodiversity Project*, 72 F.4th at 998. "Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions," the Ninth Circuit cautioned, "it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Lands Council*, 395 F.3d at 1030.

Plaintiffs have failed to meet their burden to show that the ACOG Citizen Petition documents should be added to the record. Plaintiffs argue that FDA did not consider the Schummers study or "evidence in the Petition" allegedly showing that the then-existing REMS requirements were "unduly burdensome on patient

21

access." Mot. 14–15. But the ACOG petition discussed whether these requirements were unduly burdensome for *the unapproved use of mifepristone for miscarriage management*—a use not relevant to FDA's review of the mifepristone REMS to ensure the benefits of the drug outweigh its risks and to minimize the burden of complying with the REMS, with respect to the drug's approved use. *See Whole Woman's Health All. v. FDA*, No. 3:23-CV-00019, 2023 WL 5401885, at *6 (W.D. Va. Aug. 21, 2023) ("[t]he 2022 [ACOG] citizen petition is not directly relevant to the current action" challenging the Mifepristone REMS Program).[7] And even if there were "specific hypotheses and/or conclusions" in the ACOG Citizen Petition documents that were relevant and not considered in FDA's REMS review, Plaintiffs have not shown that FDA "fail[ed] to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision." *Ctr. for Biological Diversity*, 2014 WL 116408, at *2 (quotations omitted); *see Organic Pastures Dairy*, 2013 WL 4648548, at *5.

To the contrary, FDA thoroughly considered the "general subject matter" of

---

[7] Contrary to Plaintiffs' argument, Mot. 2, the court in *Washington v. FDA*, No. 1:23-CV-3026-TOR, 2023 WL 2825861, at *6 (E.D. Wash. Apr. 7, 2023), *opinion clarified*, No. 1:23-CV-3026-TOR, 2023 WL 2941567 (E.D. Wash. Apr. 13, 2023), did not find that the ACOG petition was relevant to the January 2023 REMS modification. Instead, the *Washington* court listed the ACOG petition, which it recognized focused on "miscarriage management," as one of several recent developments relating to the Mifepristone REMS Program that together showed that "administrative exhaustion through a citizen petition on the January 2023 REMS would be futile." *Id.*

whether the then-existing REMS requirements were unduly burdensome with respect to mifepristone's approved use. FDA considered information on this topic from "published literature, safety information collected during the COVID-19 [public health emergency], postmarketing data, information from the first Mifepristone REMS Program assessment report, responses to information requests to the Applicants, and information provided by advocacy groups, individuals and the plaintiffs in the *Chelius v. Becerra* litigation." Ex. 12 at 2023 SUPP 001396. For example, FDA compared safety data from periods when the in-person dispensing requirement was being enforced with safety data from periods when that requirement was not being enforced in light of the COVID-19 public health emergency, and found that "there does not appear to be a difference in adverse events between [those] periods." *Id.* at 2023 SUPP 001383; *see id.* at 2023 SUPP 001380–84. FDA also considered the Wiebe study providing safety and efficacy data on mifepristone use for "medical abortion with telemedicine consult" in Canada, though FDA found that "there are important differences in healthcare systems between Canada and the US that render the findings from studies in Canada (Wiebe) not generalizable to the US." *Id.* at 2023 SUPP 001385–86 (footnote omitted).

Based on this analysis, FDA determined, for example, that the Patient Agreement Form requirement "does not impose an unreasonable burden on

providers or patients." *Id.* at 2023 SUPP 001378. Also, "[t]he burden of prescriber certification has been minimized to the extent possible by requiring prescribers to certify only one time for each [sponsor]." *Id.* at 2023 SUPP 001374. And "[r]emoving the in-person dispensing requirement will render the REMS less burdensome to healthcare providers and patients." *Id.* at 2023 SUPP 001399. Thus, the evidence shows that FDA thoroughly considered whether the then-existing REMS requirements were unduly burdensome for mifepristone's approved use— the "general subject matter . . . demonstrably relevant to the outcome of the agency's decision" that Plaintiffs assert was addressed by the ACOG Citizen Petition documents. *Ctr. for Biological Diversity*, 2014 WL 116408, at *2 (quotations omitted); *see* Mot. 14–15; *Organic Pastures Dairy*, 2013 WL 4648548, at *5 (finding that FDA considered the general subject matter of "whether raw milk is deemed safe for human consumption" even though it did not "perform relative comparisons between raw milk and other food products").

Plaintiffs suggest that FDA should have considered Schummers because the agency had an abstract of the study when it issued the December 16, 2021, REMS Modification Rationale Review, and the full study was published in January 2022 and discussed in the ACOG petition. Mot. 14–15. But "courts have expressly rejected the use of the 'relevant factors' test as grounds for the admission of extra-record evidence where the plaintiff argues that the new evidence *should* have been

24

considered by the agency." *Safari Club Int'l*, 2016 WL 7785452, at *5 (emphasis in original).[8] Plaintiffs argue that it is enough that a document should have been considered, citing *High Sierra Hikers Association v. U.S. Department of the Interior*, No. C-09-4621 JCS, 2011 WL 2531138, at *8 (N.D. Cal. June 24, 2011), which in turn cited *Trout Unlimited v. Lohn*, No. C05-1128C, 2006 WL 1207901, at *3 (W.D. Wash. May 4, 2006). Mot. 11. However, *Trout Unlimited* failed to follow *Lands Council*'s holding that supplementation is proper only when a document meets one of the narrow exceptions to the record-review rule. *Compare* 2006 WL 1207901, at *4, *with Lands Council*, 395 F.3d at 1029–30. Thus, *Trout Unlimited* should not guide this Court's analysis.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Complete or, in the Alternative, Supplement the Record.


Dated: January 24, 2024                    Respectfully submitted,

                                           */s/ Isaac C. Belfer*
                                           NOAH T. KATZEN
                                           ISAAC C. BELFER
                                           Consumer Protection Branch
                                           U.S. Department of Justice

---

[8] Moreover, in conducting a REMS review, the agency is not required to comb through references appended to a petition that requests action outside the scope of that review, to determine if any of those references contain information that might be relevant to that review.

25

*Attorneys for Defendants Xavier Becerra, in his official capacity as Secretary, U.S. Department of Health and Human Services; U.S. Food and Drug Administration; and Robert M. Califf, in his official capacity as Commissioner of Food and Drugs*

**Certificate of Service**

I hereby certify the foregoing document was served via ECF on all counsel of record on January 24, 2024.

*/s/ Isaac C. Belfer*

Isaac C. Belfer